358 So.2d 238 (1978)
Jack L. MITCHELL, Appellant,
v.
STATE of Florida, Appellee.
No. 77-1757.
District Court of Appeal of Florida, Second District.
May 5, 1978.
Rehearing Denied May 25, 1978.
*239 Jack O. Johnson, Public Defender, Bartow, and Karal B. Rushing, Asst. Public Defender, Bartow, for appellant.
Robert L. Shevin, Atty. Gen., Tallahassee, and Mary Jo M. Gallay, Asst. Atty. Gen., Tampa, for appellee.
SCHEB, Judge.
Appellant Mitchell was found guilty of selling heroin in violation of Section 893.13(1)(a)(1), Florida Statutes (1975). On this appeal he contends he was denied due process of law because the police failed to produce a tape recording they made of the alleged drug transaction, even though he requested the tape through discovery. Under the peculiar circumstances of this case we agree with appellant and, therefore, reverse his conviction.
The state filed an information on May 18, 1977, charging appellant with sale and delivery of heroin on the preceding March 14. On May 23 appellant filed a comprehensive demand for discovery pursuant to Fla.R. Crim.P. 3.220. Paragraph 8 of the demand asked "whether there has been any electronic surveillance including wiretapping of the premises of the Defendant or of conversations to which the Defendant was a party; and, any documents relating thereto." The state's compliance was delivered to defense counsel on October 10, the day of the trial, and indicated the state had no "electronic surveillance of the premises of which the accused was a party, and documents relating thereto."
At trial Detective White of the Pinellas County Sheriff's Department testified that on March 14 he was working undercover to assist the Hillsborough County Sheriff's Department in narcotics investigations. White said that on that day he attempted to make a buy from appellant at the New Lounge in Tampa. He identified appellant as having sold him two tinfoil packets of heroin for $20. During the transaction White was wearing an electronic transmitter, commonly called a body bug.
Detective Doss from the Hillsborough County Sheriff's Department testified that he and his colleague, Detective Latimer, monitored and recorded the transmission from White's body bug from their position across the street from the New Lounge. Doss testified that only background noise, music, and unintelligible voices were picked up on the tape. He further testified that he did not know appellant and did not see the transaction.
The defense called Detective Latimer, who also testified that there were no distinguishable voices on the tape. The defense attempted to impeach Latimer on the basis of his discovery deposition, taken five days before trial, in which Latimer purportedly said there were voices on the tape which could be made intelligible by means of some sort of electronic device. However, the deposition itself was never introduced into evidence. From Latimer's testimony it appears that he had said in his deposition the *240 tape was clear and that if it wasn't it could be "cleared up" by means of an electronic device. The detective further testified that he did not learn that the tape had been erased until after his deposition.
Appellant took the stand on his own behalf. He stated that although he worked near the New Lounge and had been there on occasion, he did not recall being there on March 14. He emphatically denied ever having met Detective White or ever having sold or given heroin to anyone.
Thus, it was undisputed that when the officers conducted the investigation which led to the charge against appellant they made a tape recording of the transaction with the expectation that this voice evidence would identify appellant as a heroin seller. Likewise, it is undisputed that despite defense counsel's timely demand the tape was never produced, but was, in fact, erased while in the possession of the state. The evidence does not reveal whether the erasure was intentional or inadvertent; nor even when it occurred. However, it may be inferred the erasure was made after defendant's discovery demand.[1]
In Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196-97, 10 L.Ed.2d 215, 218 (1963), the United States Supreme Court held:
[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.
The First District Court of Appeal applied the Brady principle in Farrell v. State, 317 So.2d 142 (Fla. 1st DCA 1975). There it was held that the unintentional destruction of a tape recording of a transaction out of which defendants were charged, after timely demand for discovery, violated the defendants' right to due process. In a specially concurring opinion Chief Judge Boyer noted that the mere inadvertent destruction of evidence would not ipso facto lead to reversal, but rather it must be demonstrated that the destroyed evidence was material and that the defendant was prejudiced by the destruction. 317 So.2d at 144.
The facts of Sobel v. State, 349 So.2d 747 (Fla. 3d DCA 1977), are almost identical to those of this case. Sobel was convicted of sale and delivery of a controlled substance. The testimony reflected that the drug transaction took place in Sobel's car with an undercover officer and informant in the back seat. There, as here, the undercover officer was outfitted with an electronic transmitter, the signal from which was monitored and recorded by another officer elsewhere. Only this latter officer heard the tape made of the transaction, and he testified that he destroyed it because he could only hear indistinct sounds and static. There, also, the defendant denied taking part in the transaction which led to his arrest. On appeal the third district held that the defendant had been denied due process because he was unable to examine the destroyed tape and utilize it in his defense if he so desired.
We agree with the rationale of our sister courts in the first and third districts. In the ordinary situation the trial court must make an evidentiary determination as to whether the evidence withheld by the state is material to the defendant's guilt or punishment. However, undisclosed evidence which does not raise a reasonable doubt as to the defendant's guilt will not require a reversal. United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); Briskin v. State, 341 So.2d 780 (Fla. 3d DCA 1977). See Antone v. State, 355 So.2d 777 (Fla. 1978).
Unfortunately, the tape in the instant case has been destroyed and is not susceptible to review under the above standard. But it must be noted that here, just *241 as in Sobel and Farrell, the only testimony available as to the nature of the evidence came from the persons responsible for its destruction. And while we do not in any way impugn the credibility of the officers who testified, we must point out that the testimony of Detective White, who identified appellant as having participated in the transaction, was in direct conflict with appellant's testimony. So, the testimony devolved into a one-against-one situation, and it therefore became crucial to appellant to have access to the tape which he claims would have corroborated his version of the critical events. This circumstance, coupled with the testimony of Detective Latimer possibly indicating discernible voices on the tape, raises a reasonable doubt in our minds as to appellant's guilt.
Accordingly, the trial court is directed to vacate appellant's judgment and sentence, and discharge him.
HOBSON, Acting C.J., and GRIMES, J., concur.
NOTES
[1] We realize the tape may have been erased before the discovery demand. In any event, we think the police should have preserved it. It has now become common practice for defense counsel to seek discovery of any evidence that may be favorable to a defendant. Prudent police practices would seem to require law enforcement agencies to preserve and protect such evidence, even if it appears to them to be of doubtful value.