362 So.2d 1022 (1978)
Stephen Roger BUDMAN, Appellant,
v.
The STATE of Florida, Appellee.
No. 77-1210.
District Court of Appeal of Florida, Third District.
October 3, 1978.
*1023 Bierman, Sonnett, Beiley & Shohat and Neal R. Sonnett, Miami, for appellant.
Robert L. Shevin, Atty. Gen., and Anthony C. Musto, Asst. Atty. Gen., for appellee.
Before HENDRY, BARKDULL[*] and KEHOE, JJ.
KEHOE, Judge.
Appellant, defendant below, was arrested, along with several other persons, on June 28, 1974, by members of the Dade County Public Safety Department during an undercover cocaine purchase. On November 13, 1974, an information was filed against appellant, Allen Braverman, Sandy Acurse, and Kim Kestner. The information charged appellant with two counts of possession of cocaine, the sale of cocaine, the conspiracy to sell cocaine, an assault with intent to murder, and the unlawful possession of a short barreled shotgun. Subsequently, after a jury trial which was held on April 18-21, 1977, appellant was found guilty of one count of possession of cocaine, the sale of cocaine, the conspiracy to sell cocaine, an aggravated assault, and the unlawful *1024 possession of a short barreled shotgun. Thereafter, a judgment of conviction was entered and appellant was sentenced to five years imprisonment on each of the counts, except the conspiracy count, the sentences to run concurrently. On the conspiracy count, he was sentenced to fifteen years imprisonment, this sentence to run consecutively to the sentence imposed on the other counts. From the judgment of conviction and sentences, appellant brings this appeal. For the reasons set forth below, we affirm.
Appellant raises the following three points on appeal: (1) that the trial court erred in denying his motion to dismiss because the intentional destruction by the State of potentially material evidence (certain tape recordings) deprived him of due process of law; (2) that the trial court erred in denying his motions for judgment of acquittal, in regard to the charges of the conspiracy to sell cocaine and the sale and possession of cocaine, because as a matter of law the evidence did not establish his guilt beyond a reasonable doubt; and (3) that the trial court erred in denying his motion for a mistrial because the prosecutor, in his closing argument, commented upon appellant's failure to testify.
Prior to the trial of this cause, appellant filed a motion to dismiss on the ground that the State had failed to produce, pursuant to his demand for production, certain tape recordings which were made during the undercover cocaine transaction which led to appellant's arrest. In this pretrial motion, which was also renewed during the trial, appellant alleged that the tape recordings had been intentionally destroyed, thereby, making production impossible. Appellant contended that this failure to produce Brady[1] material denied him his right to due process of law. The motion was denied by the trial court.
The record shows that throughout the undercover cocaine transaction, which took place inside an apartment, one of the two officers who were making the purchase was outfitted with an electronic transmitter which was being monitored and recorded by another officer located in a van parked on a nearby street. However, at the time of appellant's arrest, the officer in the van had stopped monitoring and recording the transmission. While the transmission was being monitored, the officer could hear portions of the conversations taking place inside the apartment, but, due to the weather and other circumstances, other portions were inaudible. Afterwards, the officer who made the tape recordings listened to them, assessed their audibility, and, upon determining that no audible conversations were recorded on them, without authorization disposed of the tapes by throwing them into a "garbage can." Other than this officer, no one else listened to the tapes.
Appellant's basic contention in regard to his first point on appeal is that appellee suppressed evidence in violation of Brady.
Prior to our analysis of Brady and its progeny, in the light of the particular facts of the instant case, we feel constrained to make the following commentary. The right at stake in cases, such as the one presently before us, is a defendant's discovery of evidence gathered by the government, evidence whose disclosure to defense counsel could make a trial more a "quest for truth" than a "sporting event." Brennan, The Criminal Prosecution: Sporting Event or Quest for Truth?, 1963 Wash.U.L.Q. 279. The safeguard of a fair trial is an extremely important one, but it may be undercut at the pretrial period by bureaucratic procedures or discretionary decisions of government investigative agents who make no effort to preserve discoverable material. For example, as in the instant case, when defense motions for discovery were made, it turned out that the discoverable matter, i.e., the tape recordings, had been intentionally destroyed by an investigative officer, albeit the record does not show that it was done in bad faith. In its broad sense, this *1025 presents the question of whether intentional non-preservation by such officers, as opposed to bad faith destruction or prosecutorial withholding, of discoverable evidence amounts to an illegal suppression. Some of the problems in these disclosure cases were aptly stated by Judge J. Skelly Wright in United States v. Bryant, 142 U.S.App.D.C. 132, at 138, 439 F.2d 642, at 648 (1971), as follows:
"But, in these cases we are entirely in the dark. We have no idea what may have been on the tape. For all we know, the tape would have corroborated Agent Pope's story perfectly; or, for all we know, it might have completely undercut the Government's case. There is not simply `substantial room for doubt,' but room for nothing except doubt as to the effect of disclosure. What we do know is that the conversations recorded on the tape were absolutely crucial to the question of appellants' guilt or innocence. That fact, coupled with the unavoidable possibility that the tape might have been significantly `favorable' to the accused, is enough to bring these cases within the constitutional concern. If the due process requirement is directed to evidence whose non-disclosure `might' have harmed the accused, its purpose clearly reaches the type of missing evidence at issue here. Were Brady and its progeny applicable only when the exact content of the non-disclosed materials was known, the disclosure duty would be an empty promise, easily circumvented by suppression of evidence by means of destruction rather than mere failure to reveal. The purpose of the duty is not simply to correct an imbalance of advantage, where the prosecution may surprise the defense at trial with new evidence; rather, it is also to make of the trial a search for truth informed by all relevant material, much of which, because of imbalance in investigative resources, will be exclusively in the hands of Government."
As set forth in Brady, it is clear that there is a due process requirement for certain discoverable matter to be disclosed to the defense. Also, it is clear that the Supreme Court plainly proscribed governmental suppression of evidence which exculpated the defendant. Although the Supreme Court has not yet attempted to define this standard with precision, the due process requirement has been held applicable to all evidence which might lead the jury to entertain a reasonable doubt about a defendant's guilt. See Giles v. Maryland, 386 U.S. 66, 87 S.Ct. 793, 17 L.Ed.2d 737 (1967); and Levin v. Katzenback, 124 U.S.App.D.C. 158, 363 F.2d 287 (1966). Also, it has been held that this test is to be applied generously to the defendant when there is substantial room for doubt as to what effect disclosure might have had. See Levin v. Clark, 133 U.S.App.D.C. 6, 408 F.2d 1209 (1967). Further, in construing Brady, the Fifth Circuit Court of Appeals in Williams v. Dutton, 400 F.2d 797, at 800 (5th Cir.1968), concluded that Brady "imposed an affirmative duty on the prosecution to provide at the appropriate time requested evidence which is materially favorable to the accused as direct or impeaching evidence." More recently, the Supreme Court in Moore v. Illinois, 408 U.S. 786, 92 S.Ct. 2562, 33 L.Ed.2d 706 (1972), clearly articulated the following three criteria for measuring when the Brady rule has been violated:
"(a) suppression by the prosecution after a request by the defense,
(b) the evidence's favorable character for the defense, and
(c) the materiality of the evidence" Id. 373 U.S. at 794, 92 S.Ct. at 2568, 33 L.Ed.2d at 713.
Measured against these criteria, we have concluded that, in the instant case, there has been no Brady violation. The record reflects that appellant made an appropriate request for discovery which, due to the destruction of the tape recordings, led to suppression by appellee. However, we have scrupulously reviewed the entire record and can find no showing, whatsoever, that the tapes, if produced, would have been favorable or material in any way to appellant. In fact, the trial court made the finding that the absence of the tapes was not prejudicial to appellant. Therefore, even though *1026 element (a) under the Brady rule is present in the instant case, elements (b) and (c) are totally lacking. Accordingly, we have concluded that appellant's first point on appeal is without merit. Moore v. Illinois, 408 U.S. 786, 92 S.Ct. 2562, 33 L.Ed.2d 706 (1972); Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); Wiese v. State, 357 So.2d 755 (Fla. 4th DCA, opinion filed April 18, 1978); cf. Mitchell v. State, 358 So.2d 238 (Fla. 2d DCA 1978) (finding of materiality); Ludwick v. State, 336 So.2d 701 (Fla. 4th DCA 1976) (inadequate record to demonstrate prejudice); and Hernandez v. State, 273 So.2d 130 (Fla. 1st DCA 1973) (no showing of favorability). See generally Annot., 34 A.L.R.3d 16 (1970).
Additionally, we note that a trial court's order denying a motion to dismiss reaches this court clothed with a presumption of correctness. The burden is upon an appellant to overcome that presumption and demonstrate from the record that he was prejudiced. In the instant case, appellant has failed to carry that burden. Further, the dismissal of charges against a criminal defendant is an extreme sanction which should be utilized with great caution. See United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); and State v. Smith, 342 So.2d 1094 (Fla. 2d DCA 1977). See also United States v. Quiovers, 176 U.S.App.D.C. 265, 539 F.2d 744 (1976); United States v. Carpenter, 166 U.S.App. D.C. 358, 510 F.2d 738 (1975); United States v. Perry, 153 U.S.App.D.C. 89, 471 F.2d 1057 (1972); Jones v. U.S., 343 A.2d 346 (D.C. App. 1975).
In light of the Supreme Court of Florida's recent opinion in State v. Sobel, 363 So.2d 324, (Fla. 1978), quashing Sobel v. State, 349 So.2d 747 (Fla. 3d DCA 1977), appellant's major reliance on this latter case is misplaced. Also, appellant's reliance on Farrell v. State, 317 So.2d 142 (Fla. 1st DCA 1975), is misplaced. In Farrell, the Fourth District Court of Appeal held that the unintentional destruction (by erasure) by the State of discoverable tape recordings of undercover drug transactions violated the defendants' right to due process of law. However, this holding and the resultant reversal of the trial court's denial of the defendants' motion to dismiss was based upon uncontradicted facts contained in a stipulation of the parties, particularly the stipulation that the erased tapes would have been beneficial to the defendants and their destruction resulted in prejudice. In the instant case, we have no such stipulation of fact and appellant has not shown that he was actually prejudiced at trial; to the contrary, the trial court found that no prejudice resulted to appellant.
We further note that this opinion should not be construed, in any manner, as sanctioning the unauthorized and unilateral destruction of any discoverable matter. It is most consistent with the purpose of the safeguard of due process that a duty of preservation attaches in some form once the State has first gathered and taken possession of any discoverable matter. Otherwise, disclosure might be avoided by destroying vital matter before a defendant learns of its existence. We feel strongly that the duty of disclosure is operative as a duty of preservation; only then, may meaningful discovery be possible later.
Appellant's second point on appeal, i.e., the trial court erred in denying his motions for judgment of acquittal in regard to the charges of the conspiracy to sell cocaine and the sale and possession of cocaine, is without merit. See United States v. Gomez, 529 F.2d 412 (5th Cir.1976); United States v. Marionneaux, 514 F.2d 1244 (5th Cir.1975); Roberts v. United States, 416 F.2d 1216 (5th Cir.1969); Nelson v. United States, 415 F.2d 483 (5th Cir.1969); Codie v. State, 313 So.2d 754 (Fla. 1975); Resnick v. State, 287 So.2d 24 (Fla. 1973); Adirim v. State, 350 So.2d 1082 (Fla. 3d DCA 1977); Everett v. State, 339 So.2d 704 (Fla. 3d DCA 1976); and Scaldeferri v. State, 294 So.2d 407 (Fla. 3d DCA 1974).
Further, we have concluded that appellant's third point on appeal, i.e., the trial court erred in denying his motion for a mistrial because the prosecutor, in his closing *1027 argument, commented on appellant's failure to take the stand, is meritless. In the instant case, the record clearly shows that the contentious comment made by the prosecutor was a mere reference to the evidence as being uncontradicted, not a reference to the failure of appellant to testify. In our opinion, the comment was within permissible bounds and, as such, it was not error for the trial court to deny appellant's motion for a mistrial based on the comment. See Parks v. Wainwright, 429 F.2d 1240 (5th Cir.1970); State v. Jones, 204 So.2d 515 (Fla. 1967); Clinton v. State, 56 Fla. 57, 47 So. 389 (1908); Gray v. State, 42 Fla. 174, 28 So. 53 (1900); White v. State, 348 So.2d 368 (Fla. 3d DCA 1977); Mabery v. State, 303 So.2d 369 (Fla. 3d DCA 1974); Parks v. State, 206 So.2d 431 (Fla. 3d DCA 1968); and Woodside v. State, 206 So.2d 426 (Fla. 3d DCA 1968).
Affirmed.
NOTES
[*] BARKDULL, J., participated in the decision in this case but did not hear oral argument.
[1] Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) [hereinafter cited as Brady].