363 So.2d 324 (1978)
The STATE of Florida, Petitioner,
v.
Robert SOBEL, Respondent.
No. 52633.
Supreme Court of Florida.
July 20, 1978.
Rehearing Denied November 8, 1978.
*325 Robert L. Shevin, Atty. Gen., Tallahassee, and Arthur Joel Berger, Asst. Atty. Gen., Miami, for petitioner.
Stanley M. Goldstein and Geoffrey C. Fleck of Kogen & Kogen, Miami, for respondent.
ALDERMAN, Justice.
This cause is before us on petition for writ of certiorari to review the decision of the District Court of Appeal, in Sobel v. State, 349 So.2d 747 (Fla. 3rd DCA 1977), which directly conflicts with State v. Smith, 342 So.2d 1094 (Fla. 2d DCA 1977), and Ludwick v. State, 336 So.2d 701 (Fla. 4th DCA 1976). We have jurisdiction pursuant to Article V, Section 3(b)(3), Florida Constitution.
The defendant, Robert Sobel, on a two-count information, was convicted of sale or delivery and possession of a controlled substance. In his appeal to the District Court, two issues were presented. The first was whether the charges against the defendant should have been dismissed because the state failed to preserve a tape recording made by police officers during the alleged criminal drug transaction. The second was whether the defendant's conviction should be reversed because of an alleged variance between the state's proof that the controlled substance was lysergic acid diethylamide and the allegation of the information that the controlled substance was lysergic acid. The District Court considered only the first issue, finding it unnecessary to rule on the second. It reversed the defendant's conviction, holding that the trial court erred in not granting the defendant's motion to dismiss. We disagree and quash the decision of the District Court.
*326 Prior to trial, the defendant filed a motion to dismiss, claiming that he was denied due process because the police had destroyed a taped recording of the alleged drug transaction. He asserted that the tape was crucial to his defense because, if it corroborated his contention that he took no part in the sale and never entered into any discussions about the drugs or the price or anything to do with the drugs, then he would be entitled to discharge. He said that the tape should have been preserved even though the police said it was inaudible.
From the testimony given during the hearing on the motion to dismiss, it appears that several police officers and a confidential informant met at the Miami Police Department where they made preparations for a controlled buy of drugs from the defendant. The informant had agreed to meet the defendant later in the day at the Grove Pub in Coconut Grove. Officer English accompanied the informant to the pub, posing as his "girlfriend" and carrying a concealed transmitter. The other officers were stationed nearby in a surveillance car which was equipped with a receiver and recording device. When the defendant arrived, he conversed with the informant out of the presence of Officer English. She could not hear any of their conversation, nor did she hear the defendant make any inculpatory statements when she, the informant and the defendant left the pub and walked to the defendant's car. While the defendant was in the pub, the officers in the surveillance car said that they could pick up nothing but music and static on their receiver, and when the defendant and the others left the pub and walked to the defendant's car, they could pick up no intelligible conversation. When they attempted to follow the defendant's car, their car became blocked by traffic, and they lost contact. The recorder was then turned off. The drug sale allegedly took place in the car sometime after it had been driven from the pub. Sometime later that same day, one of the officers played the tape back and heard only noises and static  nothing clear from which he could make any sense. He put the tape back in the reusable tape bin. The transmitter and receiver were subsequently tested at the station and found not to be functioning correctly and were submitted for repair.
The trial court, having considered the questions of materiality and prejudice and having accepted the officer's testimony as to the unintelligibility of the tape, denied the motion to dismiss. The District Court reversed, holding that the mere possibility that the tape could have served to corroborate defendant's contention that he was not involved in the drug deal was critical.
The Supreme Court, in Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963), held:
We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. [Emphasis supplied]
Fla. R. Crim. P. 3.220(j)(1) provides:
If, at any time during the course of the proceedings, it is brought to the attention of the court that a party has failed to comply with an applicable discovery rule or with an order issued pursuant to an applicable discovery rule, the court may order such party to comply with the discovery or inspection of materials not previously disclosed or produced, grant a continuance, grant a mistrial, prohibit the party from calling a witness not disclosed or introducing in evidence the material not disclosed, or enter such other order as it deems just under the circumstances.
Confronted with the question of whether the prosecutor's failure to tender certain evidence deprived the defendant of a fair trial, the Supreme Court, in United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), described the requirements of Brady and defined what is meant by "materiality," which gives rise to the duty of the state to disclose:
The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the *327 outcome of the trial, does not establish "materiality" in the constitutional sense.
.....
The proper standard of materiality must reflect our overriding concern with the justice of the finding of guilt. Such a finding is permissible only if supported by evidence establishing guilt beyond a reasonable doubt. It necessarily follows that if the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed. This means that the omission must be evaluated in the context of the entire record. If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial. On the other hand, if the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt. 427 U.S. at 109, 112-113, 96 S.Ct. at 2400, 2401.
The state, conceding that the tape in the present case would have been discoverable evidence under Fla. R. Crim. P. 3.220, argues that the prejudice to the defendant was minimal since the tape was unintelligible and valueless. It relies on United States v. Bryant, 145 U.S.App.D.C. 259, 448 F.2d 1182 (1971), and its progeny for the proposition that, where evidence has been lost by the state, a balancing approach should be taken which gives the trial court broad discretion to determine what, if any, sanction should be utilized against the state for loss of this evidence. Bryant involved a situation where a recording of a narcotics transaction held to be discoverable under the Jencks Act was lost by an agent of the Bureau of Narcotics and Dangerous Drugs. The court concluded that, although the negligence was great, it must be weighed against other factors, and explained:
The lost tape here had major potential importance to the question of guilt or innocence, since it might have enabled appellants to contradict the testimony of the undercover agent involved in the narcotics transaction. It developed on remand, however, that the Bureau agents had played the tape and found it to be almost entirely unintelligible. The District Court credited the agents' testimony in this regard and concluded that the tape would have been of little use to appellants. There is nothing in the record which could justify our rejection of that conclusion. In the future, of course, investigative agencies will not be allowed to excuse nonpreservation of evidence by claiming that it contained nothing of interest to defendants. But, under the more pragmatic balancing approach which we have adopted for these cases, the unintelligibility of the tapes  when combined with the very strong evidence of guilt adduced at trial  outweighs the negligence involved in the loss of the tape.
See also U.S. v. Quiovers, 176 U.S.App.D.C. 265, 539 F.2d 744 (1976); United States v. Carpenter, 166 U.S.App.D.C. 358, 510 F.2d 738 (1975); United States v. Perry, 153 U.S.App.D.C. 89, 471 F.2d 1057 (1972); Jones v. United States, 343 A.2d 346 (D.C. App. 1975), (which hold that nothing in Bryant requires that dismissal be an automatic sanction where nonpreservation of evidence is attributable to negligence of the state and hold that no public policy would be served by dismissing an indictment where the risk of prejudice is slight).
The courts in this state have likewise adopted a balancing approach. In State v. Smith, 342 So.2d 1094 (Fla. 2d DCA 1977), which involved a situation where a tape recording had been made of a drug transaction but was subsequently misplaced, the District Court of Appeal, Second District, emphasized that dismissal of charges against a defendant under the circumstances there presented was an extreme sanction to be utilized with the greatest caution and deliberation.
Stating that the purpose of the discovery rule is to aid a defendant in the preparation of his case, not to give him a procedural escape hatch for the avoidance of prosecution, the District Court of Appeal, Fourth District, in Ludwick v. State, supra, held that the mere fact that a taped recording which may have been utilized in evidence was destroyed does not require automatic reversal.
*328 Most recently, in Wiese v. State, 357 So.2d 755 (Fla. 4th DCA 1978), opinion filed April 18, 1978, which involved destruction of a tape recording of a conversation between the police and an accomplice of the defendant, the Fourth District affirmed the defendant's conviction and held that the state had carried its burden to show lack of prejudice. The District Court indicated, in a footnote, that it receded from Ludwick v. State, supra, only to the extent that Ludwick stated that the burden of proof to show lack of prejudice is upon the defendant. In Wiese, Judge Downey, referring to the decision presently before us for review, said:
In Sobel v. State, 349 So.2d 747 (Fla. 3rd DCA 1977), the court held that, since the tape was destroyed, due process required the conviction be reversed even though the officer who destroyed the tape testified that he did so because the tape contained only indistinct sounds and static. We feel due process requirements can be met where a showing is made that the contents of the lost or destroyed tape would not have been beneficial to the accused thus demonstrating a lack of prejudice. See State v. Smith, 342 So.2d 1094 (Fla. 2nd DCA 1977).
We agree and hold that a defendant is not denied due process where the contents of a lost or destroyed tape recording would not have been beneficial to the accused, thus demonstrating a lack of prejudice. The trial judge in the present case considered all of the evidence and found that the tape in question was valueless. We conclude that the state met its burden of showing that there was no prejudice to the defendant, and we hold that the trial court acted correctly in denying the defendant's motion to dismiss.
The next issue involves an alleged variance between what was charged in the information and what was proved. This matter was not considered by the District Court. Having acquired jurisdiction of the cause, we will proceed to dispose of this issue. Cf. Marley v. Saunders, 249 So.2d 30 (Fla. 1971).
The controlled substance named in the information is lysergic acid. During the course of the trial, a chemist testified that his tests on the substance in question revealed that it was lysergic acid diethylamide. When questioned by defense counsel on cross-examination as to whether there is a difference between lysergic acid and lysergic acid diethylamide, he responded affirmatively and stated the difference to be that diethylamide is missing from the acid group. He testified that lysergic acid is a different compound but that it is a building block for lysergic acid diethylamide, which contains lysergic acid, and it is possible to reduce lysergic acid diethylamide to lysergic acid. It is the addition of diethylamide which changes the compound. At the close of the chemist's testimony, the state moved to amend the information to change lysergic acid to lysergic acid diethylamide. The trial judge denied the motion, explaining that, in his opinion, the proof offered was such that the jury could find that lysergic acid is contained in lysergic acid diethylamide.
We find no reversible error. In deciding whether or not the variance is fatal, we must determine whether the information is "so vague, indistinct and indefinite as to mislead the accused and embarrass him in the preparation of his defense or expose him after conviction or acquittal to substantial danger of a new prosecution for the same offense." Fla. R. Crim. P. 3.140(o); Lackos v. State, 339 So.2d 217 (Fla. 1976). The information charged lysergic acid. From the chemist's testimony, the jury could have found that lysergic acid diethylamide contains lysergic acid. We conclude that the information in this case did not mislead or embarrass the defendant in the preparation of his defense, nor can he be subjected to a subsequent prosecution. Cf. Cole v. State, 142 Ga. App. 461, 236 S.E.2d 125 (1977); United States v. Dolan, 544 F.2d 1219 (4th Cir.1976). Jiminez v. State, 231 So.2d 26 (Fla. 3rd DCA 1970), is distinguishable because in that case the information charged the unlawful sale of heroin, a derivative of opium, while the state proved the unlawful sale of morphine, a derivative *329 of opium. Heroin is not morphine, nor is it contained in morphine.
Accordingly, we hold that the trial court did not err in denying the motion to dismiss, and further, that there was not a fatal variance between the state's proof and the offense charged. We quash the decision of the District Court of Appeal, Third District, and remand the cause with directions to reinstate the judgment and sentence of the trial court.
It is so ordered.
ADKINS, BOYD and OVERTON, JJ., concur.
ENGLAND, C.J., and SUNDBERG, J., concur with that portion of the Court's decision which holds that destruction of the tape recording did not deny defendant due process of law, but they dissent from that portion of the decision which holds that there was no fatal variance between the state's proof and the offense charged.
HATCHETT, J., dissents.