**Glenn Michael TUPICA, Petitioner,**

v.

**Louie L. WAINWRIGHT, Secretary, Department of Corrections, State of Florida and R.L. Dugger, Superintendent, State Prison, Respondents.**

No. 84–6244–CIV–KING.

United States District Court, S.D. Florida.

Oct. 8, 1984.

Philip J. Padovano, Tallahassee, Fla., Richard B. Mateer, Boca Raton, Fla., for petitioner.

James P. McLane, Asst. Atty. Gen., West Palm Beach, Fla., for respondents.

FINAL ORDER DENYING THE PETITIONER'S WRIT OF HABEAS CORPUS AND THEREBY REVERSING THE MAGISTRATE'S REPORT AND RECOMMENDATION

JAMES LAWRENCE KING, Chief Judge.

THIS CAUSE arises before the Court upon the Report and Recommendation of

the Chief United States Magistrate Peter R. Palermo concerning whether or not Petitioner has stated a claim for which relief may be granted pursuant to his Petition for Writ of Habeas Corpus. 28 U.S.C. § 2254. Specifically, Petitioner is attacking a sentence consisting of fifteen years imprisonment for one count of trafficking in cocaine.

In seeking relief from this Court, Petitioner alleges that:

1. The deliberate destruction of a tape recording of the alleged offense constitutes a denial of the Petitioner's right to due process under the Fourteenth Amendment.

This Court cannot agree with Petitioner's allegation that his due process rights under the Fourteenth Amendment have been violated and is compelled to deny the Petition for Writ of Habeas Corpus. *Sumner v. Mata,* 455 U.S. 591, 102 S.Ct. 1303, 71 L.Ed.2d 480 (1982); *United States v. Nabors,* 707 F.2d 1294 (11th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 1271, 79 L.Ed.2d 677 (1984); *State v. Sobel,* 363 So.2d 324 (Fla.1978); 28 U.S.C. §§ 2254, 2254(d).

### FACTS

On March 9, 1982, Detective Steven Luzinski, acting undercover for the Fort Lauderdale Police Department, and Tommy Eugene Yesbick, a confidential informer, met with Petitioner in the parking lot of a restaurant for the purpose of selling Petitioner a pound of cocaine. Petitioner arrived at the restaurant and handed a bag containing approximately $25,000 dollars to Detective Luzinski. Luzinski and Yesbick left with the money and told Petitioner that they would return with the cocaine in one half hour. Upon returning with the cocaine, the three men entered Petitioner's car. During this time, and throughout this transaction, Detective Luzinski was wired with a body bug and all that occurred in Petitioner's car was transmitted to a police radio and recorded on tape. Once in the car the parties gave separate accounts as to what actually transpired. The following

account is given from each parties' respective viewpoint.

Petitioner alleges the following: On the morning of trial Petitioner moved to dismiss the Information on the ground that the police officers had destroyed a certain tape recording which contained exculpatory evidence. An evidentiary hearing was conducted on the motion and it was at this time that the Petitioner testified that the deal had in fact been proposed by Yesbick. Petitioner admitted that he originally agreed to purchase the cocaine, but he stated that when Yesbick and Detective Luzinski came back to the restaurant he told them that he did not want to have anything more to do with them. Petitioner further testified that Yesbick jumped into his car and stuck the yellow bag underneath the back seat. Yesbick then said, "Look, just take it and follow me over to my home," to which Petitioner replied, "I don't want anything to do with you."

Respondents allege the following: During the same pretrial hearing Yesbick testified that when he and Detective Luzinski returned with the cocaine, Petitioner wanted to know the percentage of pure cocaine. He testified that Petitioner put the cocaine in his car, in the console, between the two seats. Detective Luzinski testified that he gave the bag of cocaine to Petitioner who then placed the cocaine behind his car seats. He further testified that their conversation centered around the purity of the cocaine in that Petitioner was extremely apprehensive and concerned that he was unable to test the cocaine and that Petitioner expressed no other apprehensions other than this fact. Also, Detective Kellam, a police officer for the City of Fort Lauderdale, testified that he saw Petitioner place the cocaine in his vehicle behind, it appeared from his vantage point, the front seat on the driver's side. Detective Stafford, also a police officer for the City of Fort Lauderdale, testified that she saw Petitioner take the cocaine and place it in the car. She further testified that Detective Luzinski got on the radio and advised that Petitioner, who was driving off in the car,

was then in possession of the cocaine and to arrest him. As for the tape in question, Detective Luzinski testified that the tape embodying this transaction was indiscernible to the point that it was of no value. As a result of this fact, he placed the tape recording in a box of pool tapes that were utilized by office personnel for reuse in dictating reports and things of that nature and not that he "destroyed" the tape as Petitioner would have it. Luzinski further testified that on the day he did this, March 9, 1982, the date of the transaction in question, the case had not been presented to the state attorney's office.

These facts now give rise to the issue of whether the eventual erasing of the tape denied the Petitioner his constitutional right to due process and a fair trial under the Fourteenth Amendment? We think not.

## PROCEDURAL HISTORY

On March 9, 1982, Petitioner was charged by Information with one count of trafficking in cocaine in violation of Florida Statute 893.135(1)(b)(3). On October 26, 1982, Petitioner moved to dismiss the Information due to the erasing of the tape as outlined above. Prior to Petitioner's trial on November 2, 1982, he was accorded a full evidentiary hearing on the motion to dismiss and said motion was denied. Following two days of trial, and at the conclusion of the State's case, the Petitioner rested without presenting any testimony or evidence. Following the arguments of counsel, the jury found the Petitioner guilty of attempted trafficking in cocaine. The Circuit Court of Broward County Florida adjudicated the Petitioner guilty of the offense and thereafter, on December 2, 1982, sentenced him to a term of fifteen years. An appeal was filed in the Fourth District Court of Appeal. The argument raised in the Petition before this Court was rejected by the Fourth District Court of Appeal on February 1, 1984, wherein the court said, "We find no merit in any of the arguments presented to us and affirm." *Tupica v. State*, 444 So.2d 572 (Fla. 4th

DCA 1984). On March 20, 1984, Petitioner filed this instant petition for Writ of Habeas Corpus. On April 12, 1984, this Court referred the above styled case to Peter R. Palermo, Chief United States Magistrate for the Southern District of Florida. Pursuant to the Magistrate's Order of June 11, 1984, Petitioner chose to delete certain grounds in order to avoid dismissal of his Petition as an unexhausted mixed petition. *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). The Magistrate also forewarned the Petitioner that, if he chose to delete the unexhausted claims in his Petition, there was a risk of forfeiting consideration of those unexhausted claims in federal court. *Id.* On August 2, 1984, the Magistrate filed his Report and Recommendation. On August 14, 1984, this Court received Respondents' Objections to the Report and Recommendation.

The Magistrate, finding Petitioner's constitutional rights had been violated, recommended that his Petition for Writ of Habeas Corpus be GRANTED, and specifically that:

1. The Petitioner be released and discharged from any and all restraints which may have been imposed upon him by reason of his conviction; and

2. This writ shall be absolute; the State shall be precluded from retrying Petitioner on the charge as stated in Case No. 82–2638 CF, in the Seventeenth Judicial Circuit in and for Broward County, Florida.

The Magistrate has set forth a number of reasons in support of his Recommendation. In order to avoid circuity of discussion, this Court has summarized the Magistrate's Report as follows:

The Magistrate held that the tape was material in a constitutional sense because it would have supported Petitioner's defense of withdrawal which, in turn, would have placed a doubt in the juries' mind as to whether or not Petitioner was guilty.

Since the tape was material to his defense, he suffered severe prejudice from the State's deliberate destruction of the

tape. As a result of the forgoing, Petitioner was denied his right to due process under the Fourteenth Amendment. Accordingly, the appropriate sanctions against the State would be to grant the Petitioner's Petition for Writ of Habeas Corpus and bar the State from retrying him.

## THIS COURT'S ANALYSIS

■ In *Sumner v. Mata*, supra, the United States Supreme Court held that 28 U.S.C. § 2254(d) requires federal courts in habeas proceedings to accord a presumption of correctness to state court findings of fact. The statute explicitly provides that "a determination after a hearing on the merits of a factual issue, made by a state court of competent jurisdiction ... shall be presumed to be correct." *Id.* Only when one of the seven specified factors is present or the federal court determines that the state court finding of fact "is not fairly supported by the record" may the presumption properly be viewed as inapplicable or rebutted. *Id.* However, mixed questions of law and fact do not fall within the scope of state court findings to which the federal court, on habeas corpus, is required to give deference. *Sumner v. Mata*, supra.

This Court finds that Petitioner's constitutional claim is a mixed question of law and fact which must be addressed in terms of our own federal standard. Accordingly, a two part analysis has been set forth: First, the Court considers a Florida Supreme Court case cited by Respondents in support of their Objections to the Magistrate's Recommendation and, secondly, the Court considers two United States Supreme Court cases in reaching the constitutional significance, if any, of the tape.

Respondents maintain that the present controversy is directly on point with *State v. Sobel*, supra. We agree. In *Sobel*, the principal issue was whether the charges against the defendant should have been dismissed because the state failed to preserve a tape recording made by police officers during the alleged criminal drug trans-

action. The Supreme Court of Florida held that defendant was not denied due process because the police officer had destroyed a tape recording of the alleged drug transaction since the state met its burden by showing that there was no prejudice to defendant given the officer's testimony that the tape was unintelligible.

In *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963), the United States Supreme Court held that "... the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." The Supreme Court, in *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), described the requirements of *Brady* and defined what was meant by "materiality." There the Court said: "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense ... since the omission must be evaluated in the context of the entire record. If there is no reasonable doubt about guilt, whether or not the additional evidence is considered, there is no justification for a new trial. On the other hand, if the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt." *Id.*

The question this Court must ask itself is twofold: First, whether the production of the tape would have enabled the Petitioner to raise a doubt in the juries' mind as to his guilt which would, in turn, have made the tape material in a constitutional sense under the *Brady-Agurs* rationale; and, secondly, what, if any, sanctions should be imposed against the State for its alleged mishandling of the tape?

■ After careful consideration of the record and the law as it applies to the facts of this case, this Court finds that: (1) the tape was not material in a constitutional sense under the *Brady-Agurs* rationale

since the State's witnesses found the tape to be almost entirely unintelligible and therefore not material to either their own case or that of Petitioner's; and (2) in light of the overwhelming evidence of Petitioner's guilt as adduced at trial, and after giving careful consideration to the circumstances surrounding the nonproduction of the tape, this Court finds sanctions unwarranted under the facts of this case. *United States v. Nabors*, supra. The Court, therefore being fully advised, herein does:

ORDER and ADJUDGE that the Petitioner's Petition for Writ of Habeas Corpus be, and it is, DENIED with prejudice. The Magistrate's Report and Recommendation is therefore REVERSED.