## STATE OF FLORIDA v DUBOSE
### Case No. 86-4542-CF
Fourth Judicial Circuit, Duval County
September 3, 1986

### APPEARANCES OF COUNSEL

**John R. Jolly,** Assistant State Attorney, for plaintiff.
**Henry M. Coxe, III** for defendant.

### OPINION OF THE COURT

LOUIS SAFER, Circuit Judge.

## ORDER GRANTING MOTION TO DISMISS COUNT II OF INFORMATION

Defendant is charged in Count II of the Information under F.S. 893.135(1)(c) with Trafficking in Heroin.

Defendant filed a motion to dismiss this count or in the alternative to reduce the charge to possession.

A hearing was held at which the State presented the sworn testimony of Thomas E. Zimmer, a chemist with FDLE. For the purpose of this hearing, it was stipulated that the witness was an expert in the field of controlled substance analysis.

Mr. Zimmer testified in essence:

*Direct Examination*

1. He analyzed certain material submitted by a Jacksonville Law Enforcement Agency in connection with this case.

2. They were:

*Exhibit 1*

A piece of foil wrapped around a piece of foil containing a lump of white substance.

*Exhibit 1A*

A piece of foil wrapped around another piece of foil with some more white substance.

*Exhibit 4*

145 foil packets containing white powder from right front pocket of defendant.

*Exhibit 5*

76 foil packets containing white powder and black zipper pouch.

3. He performed an analysis of Exhibits 1 and 1A. Based on his analysis he found that Exhibit 1 weighed 2.0 grams and contained cocaine; Exhibit 2 weighed 9.7 grams and contained no controlled substance.

4. He performed an analysis on Exhibits 4 and 5 and in this manner:

*Exhibit 4*

Examined each foil; pulled 8 of the foils at random; did a series of 6 spot tests on 1 of the foils and 2 spot tests on the other 7 foils. The results of the spot tests on the 8 foils were the same, namely, that there was the probability that an opiate derivative was present. Mingled material from all 145 foils in a pile; ran a chemical analysis

**47**

of the bulk, which confirmed presence of heroin. Total weight of mixture, including heroin, was 3.76 grams.

*Exhibit 5*

Examined each individual foil; selected 4 foils at random; did 6 spot tests on 1 foil and 2 tests on 3 foils; results of the spot tests on the four foils were the same, namely, there was the probability that an opiate derivative was present; mingled material from all 76 foils together; ran chemical analysis of the bulk, which confirmed presence of heroin. Total weight of mixture, including heroin, was 2.13 grams.

5. In both Exhibits 4 and 5, all of the foil packaging was the same. There was no difference in the physical appearance of the sample substance and the substance in the foils not tested. He based this opinion on the color, texture and consistency. Each foil also contained approximately the same amount of substance.

6. Chemical identification of heroin as a component of Exhibits 4 and 5 was based on ultra violet spectrum and a gasophomatograph spectrometer.

*Cross-examination*

7. He cannot replace the mass substance in Exhibit 4 and Exhibit 5 back into individual foils in same condition as when delivered to him.

8. The decision to mix the foils together in each exhibit was his own decision—not that of the State Attorney's office or a required FDLE policy.

9. Prior to his analysis he received no information from the State Attorney's office about a concern on the total weight.

10. Of the total 3.76 grams in Exhibit 4, the amount of opiate derivative was very small on a percentage basis. A larger percentage of the bulk would be a noncontrolled substance such as quinine. He did not do a quantative analysis of the material.

11. He examined the exhibits in chronological order so he knew Exhibit 1A contained no controlled substance before he tested Exhibit 4 and Exhibit 5. When he got to Exhibits 4 and 5, he recognized that there may well be packages that did not contain certain controlled substances.

12. The spot tests he performed told him that opiate or opiate derivative might be present. The spot tests do not conclusively prove to him that opiate or opiate derivative is present. It tells him there is a compound that is consistent with an opiate or an opiate derivative.

48

13. Quinine would give a different color reaction than opiate in testing.

14. All samples spot tested at random in both Exhibits 4 and 5 gave a similar color reaction. As an expert he concluded that an opiate or opiate derivative might be present in each random sample.

15. The spot tests are a screening tool. Further examination by gasophomatograph and spectrophotos are conclusive.

16. He is unable to visually distinguish between a controlled substance and a noncontrolled substance. A white powder is all he sees with his eye.

17. Had he been asked to analyze a bottle of pills and found one to be a controlled substance, he would not have crushed the other pills.

18. He cannot discount by visual examination that the foils that he did not spot test contained a noncontrolled substance.

*Redirect*

19. He had not heard from defense counsel prior to testing the exhibits as to concern about weight.

20. FDLE has no procedural guidelines for determining the weight.

21. He could have been weighed each foil in each exhibit individually to maintain the exhibit in the same form.

*Further recross*

22. There are two very time consuming ways that the exhibits could have been retained in their original form.

23. The reason he didn't use the time consuming method was that all of the randomly selected samples all showed the same result. Had there been different results, he would have not been able to conclude they were the same and would have tested each foil individually.

*Court*

24. It is his discretion as to how he weights the exhibits. If they look the same to him, then he will take random samples. If they look different, he separates them as to physical packaging, color, consistency and will analyze each of the groups.

25. He has to come up with a weight. To weigh the contents in each foil separately is possible but not practical.

*Further cross exam*

26. He did not add any material to the exhibit. He weighed each exhibit separately.

**49**

## DEFENDANT'S CONTENTIONS

1. Defendant was arrested for possession. There was no issue as to weight until defendant was charged with trafficking. Defendant made a demand for discovery at arraignment. The conduct of the State through the action of FDLE has prejudiced the defendant. Defendant makes no claim that such conduct by the State was malicious.

2. Defendant has been deprived of the ability to defend himself against the trafficking charge because he is unable to obtain an analysis of the substance in the original form. This is in contravention of his due process rights.

## STATE'S CONTENTIONS

1. The term "mixture" as used in F.S. 893.135 has not been defined. But it is logical to consider the legislative intent as permitting the weight of the individual packages to be added together to obtain a total weight for the trafficking statute.

2. The testing of a controlled substance by random sampling is an acceptable method of proving the weight of the total.

3. It is not incumbent upon the State to maintain the evidence in exactly the same form that it was in at the time of the arrest.

4. Defendant has not been deprived of his due process rights because cross-examination of the chemist is available to create reasonable doubt.

## APPLICABLE STATUTE

F.S. 893.135 Trafficking, etc

(1)(c) Any person who knowingly sells, manufactures, delivers, or brings into this State, or who is knowingly in actual or constructive possession of, 4 grams or more of any morphine, opium, or any salt, isomer, or salt of an isomer thereof, including heroin,—or 4 grams or more of any mixture containing any such substance, is guilty of a felony of the first degree, which felony shall be known as "trafficking in illegal drugs."

## APPLICABLE LAW

Although there are many cases involving the destruction of evidence, this is a case of first impression based on the facts and issues of this case.

A. *State v. Yo*, 400 So.2d 762 (Fla., 1981) held that the trafficking statute [F.S. 893.135(1)(b)] penalizing possession of a certain amount of

50

"any mixture containing cocaine" without regard to the percentage of cocaine in the mixture is not arbitrary, unreasonable, and a violation of due process and equal protection of the law.

B. *Wright v. State*, 351 So.2d 1127 (Fla. 1st DCA, 1977), held that the testimony of a forensic chemist and toxicologist that a randomly selected sample of the material seized from defendant tested positively as cannabis and that the bag of material weighed 10 grams were sufficient evidence for jury.

Weight of the material is generally to be determined by the jury.

C. *Kenny v. State*, 382 So.2d 304 (Fla. 1st DCA, 1978) held that each of 24 representative samples tested by an expert witness each contained from 20 to 120 grams of cannabis was sufficient on which to base conclusion that defendant possessed more than 100 pounds of cannabis.

The chemist destroyed all of the remaining portions of the substance.

D. *State v. Herrera*, 365 So.2d 399 (Fla. 3d DCA, 1978), held that destruction of suspect contraband drug unavoidably consumed during chemical testing by State's chemist does not constitute an act of suppression of evidence and a denial of due process by State sufficient to exclude trial testimony of State's chemist and preclude prosecution of defendant for possession of such contraband drug.

Defendant may attack credibility of State's chemist at trial for failure of State to give defense an opportunity to be present during testing of suspect drugs which he unavoidably consumed during chemical testing. The chemist knew prior to conducting the test that the suspect heroin would be consumed by the test.

Defendant filed certain discovery motions seeking *inter alia* the production of the alleged contraband drug used by the State chemist in conducting his test. The motions were granted after the chemist had conducted the test and the substance consumed. Nevertheless, the physical results of the test were available for defense inspection including the graph obtained from the ultraviolet spectrograph test which was performed on the suspect heroin by the State's chemist as well as the laboratory report reflecting the test results.

The law is clear that the State's intentional or negligent suppression of material evidence favorable to the defendant after a defense request for such evidence constitutes a denial of due process under our State and Federal Constitutions.

*Herrera* deals with the State's destruction of a suspect contraband drug which was unavoidably consumed during a careful chemical

**51**

testing process by the State's chemist. The Court concluded that such a chemical test was part of the State's legitimate investigation of this case and cannot be considered in any sense improper conduct. A different case would be presented if the suspect drug had been negligently destroyed during the testing process or if an agent of the State had intentionally or negligently destroyed or lost whatever remained of the suspect drug after the testing process.

E. *State v. Sobel*, 363 So.2d 324 (Fla., 1978), held that defendant was not denied due process because police officer destroyed tape recording of alleged drug transaction, in that State met its burden of showing that there was no prejudice to defendant given officer's testimony that tape was unintelligible.

The trial court utilized a balancing approach in determining what, if any, sanctions should be utilized against State for loss of evidence.

The appellate court reversed the conviction on the theory that the *mere possibility* that the tape could have served to corroborate defendant's contention that he was not involved in the drug deal was critical.

The Florida Supreme Court quashed the appellate court's decision. Quoting from *Brady v. Maryland*:

"We now hold that the suppression by the prosecution of evidence *favorable* to an accused upon request violates due process where the evidence is *material* either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. [emphasis supplied]"

Quoting from *United States v. Agurs*, defining what is meant by "materiality" which gives rise to the duty of the State to disclose:

The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish "materiality" in the constitutional sense. The proper standard of materiality must reflect our overriding concern with the justice of the finding of guilt. Such a finding is permissible only if supported by evidence establishing guilt beyond a reasonable doubt. It necessarily follows that if the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed. This means that the omission must be evaluated in the contest of the entire record. If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial. On the other hand, if the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt.

52

F. In *Stipp v. State*, 371 So.2d 712 (Fla. 4th DCA, 1979), defendant's conviction was reversed. The appellate court held that where destruction of the entire amount of seized substance was not necessary for testing process, according to testimony of State chemist, and the chemist could have saved enough of the alleged cocaine for defendant or his expert to examine and test, but instead the chemist used the entire amount seized, which was approximately 100 to 150 milligrams, there was, if not violation or right of confrontation, at least violation of fundamental right of due process, and Court was equally concerned with breaches of rules of criminal procedure and basic fairness.

Defendant urged the suppression because he was prevented from examining and having tested by his own expert a portion of the alleged illegal substance he is normally permitted to do by Florida Rule of Criminal Procedure 3.220(a)(1)(vi). The reason he was prevented from testing the substance was the intentional, but not willful, destruction of all of the seized substance by the State chemist.

The Court held: It is wrong for the State to unnecessarily destroy the most critical inculpatory evidence in its case against an accused and then be allowed to introduce essentially irrefutable testimony of the most damaging nature against the accused. It is wrong because it violates a most fundamental right of due process, constitutionally mandated in Florida and the United States as held in *Johnson v. State*, 249 So.2d 470 (Fla. 3d DCA, 1971) and affirmed in *State v. Johnson*, 280 So.2d 673 (Fla., 1973).

In *Johnson* as here the precise question was the State's destruction or loss of critical, inculpatory evidence.

Comment: This was decided after *Sobel*.

G. In *U.S. v. Herndon*, 536 F.2d 1027 (5th Cir., 1976) it is stated: "Whether a defendant has been deprived of the right of due process will depend upon the materiality of the evidence, the likelihood of mistaken interpretation of it by government witnesses or the jury, and the reasons for its nonavailability to the defense".

H. In *Adams v. State*, 367 So.2d 635 (Fla. 2d DCA, 1979) dynamite was destroyed by the State in good faith effort to employ a render-safe technique. This did not require reversal of a conviction absent clear demonstration that defendant was prejudiced due to State's inability to produce alleged dynamite for analysis.

Defendant can only say that he has been prejudiced because he was unable to have the material in question subjected to chemical analysis which might demonstrate that the substance was not in fact dynamite.

**53**

If this were a close case, we might seriously entertain that argument. Whether the nature of a substance determines whether its possession is illegal, the right of a defendant to have that substance subjected to chemical analysis cannot be lightly regarded.

In this case, jury heard evidence that defendant had represented the material as dynamite and for which he was paid.

I. *Asmer v. State*, 416 So.2d 485 (Fla. 4th DCA, 1982) involved a conviction for trafficking in methaqualone. This was affirmed. The appellate court held: State was not required to test each table of 1000 tablets delivered by defendant to prove that enough tablets contained enough pure methaqualone to satisfy statutory amount.

At trial, State's expert witness testified that she determined the net weight of table to be 795.7 grams and that she tested one table at random and found it to contain methaqualone.

Section 893.135(1)(e) prohibits the sale of any mixture containing methaqualone. The State cannot be expected to draw distinctions so fine as to treat all law violators with the precision of a computer. To require the State to test each tablet of the 1000 tablets delivered by defendant and prove that enough tablets contained pure methaqualone to satisfy the statutory minimum is patently unreasonable.

Comment: In *Asmer*, the tablets were not changed, so defendant could have examined if he desired to do so. It is a different issue than the instant case.

J. *Strahorn v. State*, 436 So.2d 447 (Fla. 2d DCA, 1983) involved a conviction for shooting into an occupied vehicle. Defendant filed a motion to produce the damaged windshield, which was granted. Subsequently, defendant was notified that the windshield had been destroyed. Prior to destruction, the State performed a lead test.

At trial, the person who performed the test testified that neither of the two damaged areas on the windshield were positive for the presence of lead. Her opinion was that it was just as conceivable that a stone had caused the damage to the windshield as a bullet.

In addition to her testimony, photographs of the damaged windshield were admitted into evidence.

Defendant claimed denial of Sixth Amendment right of confrontation. Rejected because confrontation alludes to "witnesses", not physical evidence.

Defendant also claimed that the destruction of evidence violated his right to due process.

54

In this case defendant does not content and we do not find that the State deliberately destroyed the evidence or acted in bad faith. Thus, the question is whether defendant's case was prejudiced by the destruction of this evidence. We do not find that it was. Defendant had the benefit of the test result conducted by the State which, if not favorable to defendant, was at least neutral because the tests did not indicate the presence of lead on the windshield.

Defendant was able to cross-examine the person who had conducted the tests and to use the photographs which had been taken of the damaged windshield.

Defendant has not shown that an examination of the windshield by his own experts would produce results any more favorable to him than the State's testing did.

The mere possibility that nonpreserved evidence might have helped the defendant is not a sufficient showing of prejudice.

K. *Lancaster v. State*, 457 So.2d 506 (Fla. 4th DCA, 1984) held that defendant's due process rights were violated by State's failure to preserve discoverable evidence.

This case involved the burning of a truck and charge of arson against defendant. Fire investigators conducted a physical examination of the truck. The truck was released to the owner because the lead fire investigator felt that the truck no longer had evidentiary value of the State. He testified that another investigator might have a different opinion than his conclusion that the fire was not accidental. The owner had salvage work done on the truck which materially changed its condition.

The opinion points out: "The problem takes on particular significance when the lost evidence requires scientific analysis or expert testimony." It cites *State v. Ritter*, 448 So.2d 512 (Fla. 5th DCA 1984):

"It would be fundamentally unfair, as well as a violation of rule 3.220 to allow the state to negligently dispose of critical evidence and then offer an expert witness whose testimony cannot be refuted by the Defendant."

The State argued that the Florida Supreme Court in *Sobel*, supra, held that the "mere possibility" that the evidence would have assisted defendant is not sufficient grounds to reverse a conviction. The appellate court pointed out that *Ritter, Stipp*, and *Cource*, 392 So.2d 1029 (Fla. 4th DCA, 1981) were post-*Agurs* and post-*Sobel*, yet the results

**55**

in those cases were unaffected by either the "mere possibility" standard for materiality or the "balancing approach" to prejudice (*Sobel*).

L. *United States v. Hollman*, 541 F.2d 196 (8th Cir., 1976) involved an examination of 127 packets which were emptied into a beaker and mixed together. An expert testified that the substance was cocaine. The opinion stated that "accuracy is a question of weight rather than admissibility and appellant was afforded full opportunity to cross-examine the witness." The attack was not as to weight, but whether the expert opinion was hearsay.

M. *Purifoy v. State*, 359 So.2d 446 (Fla., 1978) held:

"In a case such as this, where a portion of the substance introduced by the state as contraband is claimed by the defendant to be nonprohibited matter, it becomes the state's burden to prove that the weight of the contraband matter alone exceeds the statutory threshold of five grams. To hold otherwise would not only place an intolerable burden on criminal defendants, but would contravene the fundamental rule that the prosecution must prove every essential element of the crime charged."

N. *Moore v. Illinois*, 408 U.S. 786, 92 S.Ct. 2562, 33 L.Ed.2d 706, clarified the prosecutor's responsibility in *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed. 215 (1963) in the face of a defense production request where the evidence is favorable to the accused and material either to guilt or punishment. The three elements in a *Brady* violation are: (1) suppression by prosecution after request by the defense; (2) the evidence's favorable character for the defense, and (3) the materiality of the evidence.

Comment: In the instant case, the examination of the expert occurred prior to the demand for discovery.

O. *Salvatore v. State*, 366 So.2d 745 (Fla., 1979) holds that the standard of prejudice which must be met by defendant in order to obtain new criminal trial varies inversely with degree to which conduct of the trial has violated fundamental notion of fairness.

P. *Wolford v. U.S.*, 401 F.2d 331 (10th Cir., 1968). Scientific testing procedures and methods of laboratory analysis are matters of professional judgment about which experts may differ.

It is not contemplated that the government shall prepare a defense in criminal cases. The procedures used were fully explained in cross-examination.

Q. *Madruga/Guzman v. State*, 434 So.2d 331 (Fla. 3d DCA, 1983). State presented evidence from an experienced drug enforcement officer

that he delivered to these and other defendants, marijuana in excess of 100 pounds, to wit: 75 bales of marijuana with weight of 41-55 pounds a bale. In addition, two pictures of the contraband were introduced into evidence. Through no fault of the State, the contraband was destroyed by federal authorities before it could be tested by defendant. The Court held that notwithstanding the destruction of the contraband, the evidence was sufficient to support a finding of trafficking in excess of 100 pounds.

Only if defendants can show a reasonable doubt that the omitted evidence would disclose that the contraband was of a weight less than 100 pounds would its destruction and unavailability be prejudicial.

Defendants contest the ability of the witness to testify as to the weight. The Court held that an experienced DEA officer as well as a lay witness could have testified to the approximate weight of a given matter.

R. *Lassiter v. Dept. of Social Services*, 452 U.S. 18, 101 S.Ct. 2653, 68 L.Ed.2d 640 (1981) [child dependency case]. Due process protections which are constitutionally required makes clear that a determination of what process is due in a given context requires a balancing of competing interest at stake.

S. *Morrisey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed. 2d 484 (1972). Procedural requirements necessary to satisfy due process depend upon the circumstances and the interests of the parties involved.

## FINDINGS OF FACT AND CONCLUSIONS

1. There is no prohibition to an expert chemist selecting random samples for the purpose of testing substances.

2. In this case he spot tested random samples of a particular group of 145 foil packets (Ex. 4) that came from the defendant's pocket. They were all the same wrapping and to his naked eye the contents looked the same. Therefore, he concluded that based upon the random samples, that each one of the packets contained a substance similar to the sample and therefore he mixed them together for the purpose of weighing and confirming scientifically that the mixture contained an opium derivative.

3. The expert handled the other group of 76 foil packets (Ex. 5) in a similar manner, spot testing random samples and then mixing together to weight and run scientific test to confirm presence of opium derivative.

4. The examination of the evidence by the expert chemist occurred

**57**

prior to arraignment. When defendant filed a demand for discovery at arraignment, the form of the evidence had already been substantially changed.

5. Defendant in this case does not contend and we do not find that the State deliberately destroyed evidence or acted in bad faith. The issue is whether defendant was prejudiced by destruction of this evidence.

6. Defendant contends that he is prejudiced because the material issue in the trafficking charge is the weight of the mixture and there is no evidence as to what substance was in each foil packet that the State chemist mixed together. He is now precluded from challenging the findings of the State chemist by his own expert testimony as to whether each of the foil packets contained heroin.

7. The burden on the State is to prove beyond a reasonable doubt that the defendant had in his possession a mixture, containing heroin, that weighed 4 grams or more. At trial the chemist will testify on behalf of the State that he used his judgment in mixing all like foil packets together and came up with a total weight in excess of 4 grams, and that a scientific test of the mass conclusively proves that it contains heroin. The testimony of the expert does not help the defendant. It would be the expert's testimony that convicts the defendant if he is believed by the jury.

8. Defendant has the right to cross-examine the expert and attempt to establish reasonable doubt based on the fact that the chemist did not examine each foil packet and cannot swear that each foil packet contained heroin. To create reasonable doubt solely on the cross-examination of an expert is difficult.

9. Defendant has not suggested that the results would have been different if his own expert could have tested each package. The likely explanation on defendant's behalf that comes to my mind is that most of the foil packets, although packaged in a like manner and in the same pocket as the sample foil packets, did not contain heroin. To me, this is an improbable circumstance, but not an impossible circumstance.

10. There is no collateral evidence that can be presented by the State on the material issue of what was in each foil packet, i.e., there was no offer of sale or representation by defendant to anyone that each foil packet contained heroin.

11. This differs from the *Adams* case in which dynamite was destroyed. In that case the State was able to present evidence that the defendant had offered to sell dynamite and had been paid for delivery

58

of dynamite. Therefore, the destruction of the dynamite itself did not deprive the defendant of a fair trial on the issue of whether the substance was dynamite.

12. In *Sobel*, the Court found as a fact that the destroyed tape was not intelligible. Therefore, it could not have helped the defendant one way or the other in proving that he was not the person involved in the sale.

13. In *Strahorn*, the absence of the windshield did not seriously prejudice the defendant because the expert testified there was no gunshot residue on the windshield and therefore the State was not able to prove through the expert that defendant had committed the crime of shooting into an occupied vehicle.

14. It would have been more trouble for the chemist to have tested and weighed the substance in each package individually and then replaced it in the packets, but in balancing the rights of a defendant, this does not seem to be an unreasonable expectation from the State. It would be appropriate for the State to have preserved the opportunity for the defendant to have the packages examined in their original state. At a minimum, it would be reasonable to expect that the chemist would have scientifically tested each packet and preserved the result before he mixed them all together.

15. In this case defendant made a demand for the production of the packets as provided by the Rules at the first opportunity, namely arraignment, so defendant was not negligent.

16. The judicial decision in this case involves a balancing act which is required in due process considerations.

17. The balancing act is between the State having the opportunity to charge defendant with the serious crime of trafficking, notwithstanding the State chemist having intentionally, but not maliciously, changing the form of the evidence, prior to discovery demand from the defendant, and using what he considered to be reasonable judgment AND the defendant's right to a fair trial based upon his opportunity to have evaluated the evidence that the State plans to use against him and which through no negligence on his part is not available because of State conduct.

There are three possible methods in which the evidence could have been evaluated:

1. The chemist could have scientifically evaluated each foil packet, weighed the substance and returned the substance into the packet; the weight of the substance of each packet would be added up to determine

total weight; if the total weight is 4 grams or more and there is heroin of any quantity in the mass, there could be no due process problem.

2. The chemist could have scientifically evaluated each foil packet, and then put them all together for the purpose of weighing Exhibit 4 and weighing Exhibit 5. While not as forensically sound as the first method, there would be a scientific result as to each packet that an expert on behalf of defendant, could evaluate. This would give defendant the opportunity to defend the case, even though the evidence is not in the original form. Although not the facts of the instant case, but by way of dictum, I believe there would be no due process problem with the second method because an expert for the defendant could have evaluated the tests that were done on each of the packets and would be in a position to advise the defendant concerning the analysis. The weight would speak for itself because the mass could still be weighed.

3. The chemist could have used random samples and spot tested the samples which showed a likelihood they were similar, making a determination by his naked eye that all of the packets contained the same substance, putting them all together and then making a scientific test and weighing the mass. There is no scientific data on each of the packets. There is no physical result of the testing of each foil packet available for defense inspection. This is the way it was done in this case. It may be an acceptable method from the chemist standpoint because it is easier than the other two methods. But when balanced against the due process rights of the defendant, the scale tilts in favor of defendant.

The issue is not good faith. No one attributes to the chemist malicious or negligent destruction of the evidence.

A defense expert would confirm the State's chemist's inability to determine by the naked eye what contraband, if any, is contained in the foil packet (an allegation which the State chemist admits). He could also confirm that spot testing does not conclusively prove that a drug is present. He could testify that there was a better method, but he couldn't say that State chemist's method is wrong. There is no way for the defendant's chemist to testify about or confirm the weight of each packet and the contents of each packet.

The Court therefore concludes that the due process rights of the defendant have been adversely affected and the defendant is entitled to have the motion suppressed.

17. In case it becomes an issue on appeal, I find that the State has the right to consider the weight of both Exhibits 4 and 5 in proving a

trafficking charge. The fact that they came out of different pockets of defendant's clothing is not material. The statute refers to possession by defendant, and such possession involves all of his pockets. However, the State does not have he right to weigh noncontraband material with contraband material (or a mixture of contraband and noncontraband material) to reach the trafficking weight.

18. The responsibility for error in this case should be borne by the Florida Department of Law Enforcement for failure to establish rules that guide every one of its chemists. Sufficient warning has been delivered by the courts.

In *Herrera*, supra, the Court comments:

"We agree that it would be better practice, although not constitutionally mandated, for the State to delay the testing of miniscule quantities of suspect drugs in a drug prosecution until the defendant or his representative has been given a fair opportunity to be present during such testing. . ."

In *Stipp*, supra, the Court comments:

"Additionally, if the State has a suspected illegal drug or other evidentiary item it expects to destroy by testing then the better rule is to notify the accused and allow him to have some minimal participation in the testing process. . ."

19. The language in *Sobel*, "A mere possibility that the defendant might be affected is not sufficient" is confusing.

The Court does not understand what burden there is on the defendant to prove that the evidence in its original form would have been helpful to his defense. As previously set forth, the Court finds from the chemist's testimony that the tinfoil packets in Exhibits 4 and 5 looked exactly the same. Common sense and other evidence obtained as a result of the search warrant indicates defendant was in the business of selling drugs. Is there more than a mere possibility that the defendant would have packaged some of the foil packets with heroin and some without heroin? Exhibit 1A obtained from defendant contained only noncontrolled substance in one place on his clothing and also placed noncontrolled substance in tinfoil packets in another place on his clothing, comingled with heroin packets? The possibility of the defendant being able to defend himself successfully in this case seems very remote.

Nevertheless, the State has excluded his possibility of defending no matter how remote and under *Stipp* this accrues to his benefit. *Stipp, Lancaster, Ritter* were all decided after *Sobel.* The *Sobel* holding seems

to be limited to those cases in which a trial court is able to make a factual finding that no possible prejudice inured to the defendant as a result of the destruction of the evidence. I cannot so find.

20. The defendant was arrested on May 8, 1986. He was arraigned on May 29, 1986, on which date the defendant filed an delivered to the State a demand for discovery. Included in the demand for discovery were items #6 (tangible papers or objects from the defendant), and #11 (tangible objects intended to be used by the State at the trial).

The chemist testified that he did the examination on 5/23/86. This means that at the time of the demand for discovery the form of the evidence had already been changed.

21. To rule in favor of the State under these circumstances would be to give lip service only to the principle of "due process". Because of his examination, the chemist becomes not only the witness, but also the jury in concluding that the evidence sustains a charge of trafficking.

ORDERED AND ADJUDGED that the defendant's Motion to Dismiss Count II of the Information is hereby granted.

DONE AND ORDERED at Jacksonville, Duval County, Florida, this September 3rd, 1986.