317 So.2d 142 (1975)
Bruce Spencer FARRELL, Appellant,
v.
STATE of Florida, Appellee.
Steven Irvin RAULERSON, Appellant,
v.
STATE of Florida, Appellee.
Nos. V-445, W-29.
District Court of Appeal of Florida, First District.
August 1, 1975.
Larry G. Turner of Goldin & Turner, Gainesville, for appellant in No. V-445.
Alan R. Parlapiano, Asst. Public Defender, for appellant in No. W-29.
Robert L. Shevin, Atty. Gen., and A.S. Johnston, Asst. Atty. Gen., for appellee.

ON REHEARING GRANTED
MILLS, Judge.
By its opinion of 5 May 1975, this Court affirmed the trial court as the record furnished it showed that defendants did not condition their pleas of nolo contendere on a reservation of the issue raised by their appeal.
Defendant Farrell petitions for rehearing alleging that through procedural error the clerk failed to reflect defendant Farrell's reservation in the Minutes, and attaches a certified copy of the proceedings *143 which shows this was properly done. Defendant Raulerson petitions for rehearing alleging that his right to appeal has been defeated by the oversight of his attorney, the Public Defender, in reserving his right to question the validity of the order on appeal, though it was agreed this would be done. Defendant Raulerson requests the Court to consider the issue raised on the appeal as provided by Hollingshead v. Wainwright, 194 So.2d 577 (Fla. 1967). The State has not denied the defendants' allegations. A rehearing is granted defendants. We withdraw our opinion of 5 May 1975 and reverse.
The Court will now consider the issue raised by this appeal. That issue is whether the unintentional destruction of a tape recording of the transaction out of which defendants were charged, after timely demand for discovery, violates defendants' right to due process.
Defendants filed a motion to dismiss the informations contending that the State unintentionally destroyed admissible material evidence which violated their right to due process. The State and defendants submitted the following stipulation of facts for consideration by the trial court:
"1. On or about 26 September 1973 an INFORMATION was filed charging the Defendant in COUNT I with delivery of cocaine and in COUNT II with possession with intent to sell of cocaine.
"2. On or about 17 October 1973, the Defendant entered a written PLEA OF NOT GUILTY and, pursuant to Rule 3.220, F.R.Cr.P., filed a demand for discovery. Paragraph 7 of said DEMAND FOR DISCOVERY demanded the production of electronic surveillance of the Defendant or documents related thereto. Paragraph 2 of said DEMAND FOR DISCOVERY demanded `the statement of any person whose name is furnished in compliance with' paragraph 1 of said DEMAND.
"3. On or about 29 October 1973 the STATE OF FLORIDA filed its ANSWER TO DEMAND FOR DISCOVERY and in Paragraph 2(h) thereof indicated that it has no electronic surveillance evidence or documents relating thereto. Paragraph 2(a) of the State of Florida's ANSWER TO DEMAND FOR DISCOVERY indicated that it had no statements given by persons listed in Paragraph 1 of said ANSWER TO DEMAND FOR DISCOVERY.
"4. On the night of the Defendant's arrest, he had certain conversations with undercover agent L.L. Vipperman of the Alachua County Task Force which is under the direction of The State Attorney. Attached to the person of Agent Vipperman was an electronic device which transmitted the verbal negotiations between the agent and the Defendant to another Task Force agent stationed nearby who recorded these negotiations on tapes. This is the customary practice in the investigation of cases of this type and is a precaution for the protection of the agents involved and the large sums of public monies often used by them for the acquisition of controlled substances for use as evidence. The tape recording was for protective purposes only and its use as evidence in the event of arrest was neither contemplated nor intended.
"5. Some time after the completion of their investigation and after the Defendant's DEMAND FOR DISCOVERY was filed, the tape was again used in another unrelated investigation, during the course of which, the portion containing the conversations between Agent Vipperman and the Defendant was `played over' and thus, erased. The Defendant's counsel makes no claim that this was done intentionally or with the intent to deprive the Defendant of any substantive or procedural rights or to impede the preparation of his defense. However, the Defendant argues that the tapes would have been beneficial to him in the cross-examination at trial of the State *144 Task Force agents and would have enabled him to impeach them or cast doubt upon their credibility. He also suggests that the erasure of the tape has an adverse effect on his raising the defense of entrapment and/or in showing that a delivery never took place. He contends that the net effect upon him of the loss of the tape is the same whether it was done through carelessness, and inadvertence, or done maliciously and intentionally.
"6. The erasure of the tape was unknown to the State Attorney when he responded to the Defendant's DEMAND FOR DISCOVERY that he had `no electronic surveillance of the premises of the accused or of conversations which accused was a party.'"
The Supreme Court of the United States stated in Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215:
"We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."
The stipulated facts come within the standards set forth in Brady:
1. defendants made demand for discovery of the tape;
2. the State suppressed the tape by denying its existence, and thereafter erasing the tape;
3. the tape contained favorable evidence as it transcribed the entire transaction between the defendants and the officer. If the State doubted the admissibility and usefulness of the tape, it should have admitted its existence in its response to the demand for discovery and permitted the trial court to determine its duty to disclose;
4. the taped conversation was material and could well have been used by defendants in support of their defense, challenging the credibility of the State's witnesses, or impeachment; and
5. it is immaterial whether the State suppressed in good or bad faith.
Under the stipulated facts, defendants were denied due process. It is our opinion that our federal and state constitutions protect a person charged with a crime from acts which might be practiced in the name of justice by police and prosecuting officers to hinder an accused in the effective presentation of his defense. This abuse must not and will not be permitted.
Reversed and remanded to set aside the judgments, sentences imposed, and dismiss the informations.
McCORD, J., concurs.
BOYER, C.J., concurs specially.
BOYER, Chief Judge (specially concurring).
I concur, but in doing so I feel it desirable to point out that we reverse in this case based upon the uncontradicted facts as recited by the stipulation of the parties, particularly the allegation by the appellant that the erased tapes would have been beneficial to him and that destruction thereof resulted in prejudice. (See Treverrow v. State, Sup.Ct.Fla. 1967, 194 So.2d 250 and Estes v. State, Fla.App. 1st, 1974, 294 So.2d 122.) In other words, the mere fact that a tape recording which might have been used in evidence was inadvertently destroyed does not ipso facto lead to reversal. On the contrary, it must be demonstrated that the destroyed evidence was material and that the defendant was prejudiced by the destruction.
I also feel it important that in reversing we again admonish the State to adhere to the rules relative to discovery in criminal proceedings. (See Hawkins v. State, Fla. App. 1st, 1975, 312 So.2d 229.)