## STATE OF FLORIDA v PAVON

Case No. 84-1270 CF

Seventeenth Judicial Circuit, Broward County

April 24, 1986

### APPEARANCES OF COUNSEL

**Ronald D'Anna,** Assistant State Attorney, for plaintiff.
**Steve Bronis** for defendant.

### OPINION OF THE COURT

J. LEONARD FLEET, Circuit Judge.

Defendant, Evelyn Carmen Pavon, was arrested on February 2,

1984, upon a charge of trafficking in cocaine. Defendant has filed numerous motions attacking the constitutionality of F. S. 893.135, all of which have been resolved against her by decisions made by the appellate courts of this state in other cases. Defendant has filed motions designed to suppress evidence, the grounds for which, and the merits of which, do not need to be discussed herein.

The two motions filed by defendant Pavon which now require major judicial inquiry and resolutions are her motion to dismiss predicated upon negligent premature destruction of certain electronic records of telephone conversations between herself and the confidential informant, and a motion to dismiss predicated upon the state having entered into an allegedly illegal substantial assistance contract with the confidential informant.

## FACTUAL ANALYSIS

The confidential informant critical to the instant case is one Margaret Dye, who, on January 27, 1984, was arrested upon charges of Trafficking in Cocaine and Delivery of Cocaine. Because the amount of mixture containing cocaine was more than 28 grams but less than 200 grams, Mrs. Dye was exposed, on the trafficking charge, to the possibility of imprisonment for a minimum mandatory term of five years before she would be eligible for consideration for parole; the delivery of cocaine charge carried no minimum mandatory term of imprisonment. At the time of her arrest, Mrs. Dye was on probation for a 1980 felony conviction.

Margaret Dye, was, on February 20, 1980, adjudicated guilty of the felony of obtaining property in return for a worthless check and was placed upon three years probation by Circuit Judge Arthur Franza of this judicial circuit. On February 21, 1980, there was filed in the County Court of Broward County an information accusing Mrs. Dye of the exact same charge, but as a misdemeanor. The misdemeanor capias remained outstanding and unserved until the arrest of Mrs. Dye in 1984. For reasons not known to this Court, a violation of probation warrant issued by Judge Franza against Mrs. Dye on March 2, 1982, remained unserved and outstanding until she was arrested in 1984.

After receiving cocaine from her on December 27, 1983, and again on January 27, 1984, Hollywood detective Joseph Nickmeyer arrested Mrs. Dye and charged her with delivery of cocaine and trafficking in cocaine. As a result of this arrest, the outstanding warrants for violation of probation and the misdemeanor bad check case were discovered and served upon her. According to the then existing convenience bond schedule, Mrs. Dye's total bonds exceeded $250,000

117

and, in addition thereto, there was no bond set for the charge of violation of probation.

Shortly after she was arrested, Mrs. Dye engaged in conversations with the arresting officers, initiated by them, the thrust of which was that she could obtain a more favorable treatment of her then pending charges if she would work with the law enforcement authorities. Ultimately, a "substantial assistance" contract was negotiated between Mrs. Dye and the State of Florida whereby she agreed to participate in the identification and subsequent prosecution of an unnamed third party who might be violating the narcotics laws of this state.

Pursuant to an order entered by Judge Franza on January 31, 1984, Mrs. Dye was furloughed from confinement in the Broward County Jail into the custody of Detective Joseph Nickmeyer with the special admonition that ". . . escape from (Nickmeyer's) custody shall be deemed escape from confinement." While in Detective Nickmeyer's custody, Mrs. Dye initiated several telephone calls to her friend, Ms. Pavon, for the purpose of obtaining narcotics. These telephone conversations were monitored by Hollywood police and electronically recorded by them.

On February 1, 1984, at the request of Assistant State Attorney Barry Goldstein, Judge Franza entered an order reducing Mrs. Dye's total bail bond requirements to $5,000, which was posted by a surety bonding company on February 2, 1984. On February 2, 1984, at about 11:45 P.M., Ms. Pavon was arrested when she allegedly delivered more than 28 grams of cocaine to Mrs. Dye in the parking lot of a restaurant in Hollywood located at the intersection of Sheridan Street and I-95.

On March 29, 1984, Mrs. Dye appeared before Judge Franza and pled guilty to the charge of violation of her probation; her probation was revoked and terminated, thereby bringing the matter to a close. At the same time the aforesaid matter was resolved, Mrs. Dye pled guilty to the charges of delivery of, and trafficking in, cocaine; adjudication and sentence were deferred until May 24, 1984. By order dated March 30, 1984, Judge Franza sealed from scrutiny any and all documents related to the "substantial assistance" contract between Mrs. Dye and the State of Florida. On May 24, 1984, sentencing was rescheduled until May 31, 1984, when it was again rescheduled until July 12, 1984. At all times material hereto, Mrs. Dye was at liberty upon the surety bonds mentioned above. When July 12, 1984, arrived, Mrs. Dye was adjudicated on both of the felonies to which she had entered her pleas of guilty and was placed upon probation for five and ten years

118

respectively, said probationary periods to run concurrently with each other.

The cocaine trafficking case against Ms. Pavon developed in a normal fashion. The State responded to the Defendant's discovery demands except as to the revelation of the confidential informant. The defendant submitted a motion requesting this Court to compel disclosure of the identity of the confidential informant, which motion was ultimately granted. The defendant took the deposition of the confidential informant and the law enforcement officers, during the course of which it became known that the tapes of the telephone conversations between Ms. Pavon and Mrs. Dye were no longer available due solely to negligence on the part of the Hollywood Police Department. It also came to be established that the law enforcement officers had listened to the tapes after they had been made and the tapes were clear and audible.

## BASIC CONTENTIONS OF THE PARTIES

Defendant vigorously argues that she was entrapped by Mrs. Dye,, who was acting as an agent of the Hollywood Police Department, into delivering the container of alleged cocaine and that the contents of the missing tape recordings would establish the truth of her assertion. The State, with equal fervor, counters the argument of the defendant by asserting that, even though the tapes are lost, the officers who listened in on the conversations and the confidential informant have been made available to testify as to the content of the tapes and their testimony is sufficient to rebut any assertion on the part of the accused that she was entrapped. Since the witnesses to the conversations have testified, the state argues, there is no prejudice done to the accused by the loss of the electronic recordings of that about which the state witnesses have testified. The defendant, understandably, suggests that the argument offered by the state, establishes her prejudice.

As to the motion to dismiss based upon the alleged illegality of the "substantial assistance" contract, the defendant takes the position that such an agreement subverts the legislative intent of the trafficking legislation and she should not be held to answer when the law enforcement authorities themselves break the law. The State responds, with little hesitation, that the contract was perfectly legal when one accepts the proposition that Ms. Pavon was Mrs. Dye's, ". . . long time and only supplier. . . ." Further, argues the State, the sentence of Mrs. Dye had already been announced and would not be affected by the outcome of Ms. Pavon's case, thereby removing any possible taint from the "substantial assistance" contract.

119

## THE "SUBSTANTIAL ASSISTANCE" CONTRACT

When the Florida Legislature debated the adoption of F. S. 893.135, much ado was made concerning the ability of the prosecutors of the various judicial circuits and the law enforcement agencies throughout the state to utilize the harsh penalties of the statute as an inducement to persuade those deemed to be functioning in the lower levels of narcotics activities to become sources of information whereby high echelon narcotics offenders could be apprehended. By permitting law enforcement agencies and prosecutors to enter into an agreement whereby temporal rewards would be made available to those who cooperate with them, reasoned the Legislature, the supply of illegal drugs would be interdicted and an obvious threat to the people of this state could be greatly reduced, if not eliminated.

The legislative history of F. S. 893.135 is nothing short of amazing, almost bordering on the miraculous. (See *State v. Kauffman*, 430 So.2d 904 (Fla. 1983)). Almost as though the legislators had just returned from viewing the film, or reading the book, *"The Godfather"*, they enacted a statute that permits law enforcement agencies and prosecutors to make lower echelon narcotics participants "an offer they can't refuse" through the guise of "substantial assistance" in exchange for relief from the harsh minimum mandatory prison commitment required by F. S. 893.135.

This Court has no argument against the proposition that those who would deal in illicit narcotics and seek to make financial gain as a result of the weakness and misery of others should be dealt with sternly, swiftly and—if necessary—harshly. The difficulty this court finds to exist is with F. S. 893.135(3) wherein the state attorney may move the sentencing court for leniency not otherwise available to one who has violated any of the provisions of the statute if such person had rendered "substantial assistance".

Although the wording of F. S. 893.135(3) stipulates that the substantial assistance should be in reference to ". . . the identification, arrest, or conviction of any of his accomplices, accessories, coconspirators, or principles. . . .", the various judicial circuits of this state reflect great disparities in the manner in which this phrase has been interpreted. The court file in this case contains copies of letters from the State Attorneys of the First, Second, Third, Ninth, Tenth, Fifteenth, Seventeenth and Twentieth Judicial Circuits reflecting that, as late as July, 1983, there was not in existence a standard statewide policy concerning the manner in which the "substantial assistance" provisions of F. S. 893.135(3) were implemented. From the available evidence, it seems as

120

though Broward County (the Seventeenth Judicial Circuit) stood alone in its efforts to achieve uniformity of the manner in which "substantial assistance" contracts would be negotiated, enforced and honored, in all cases.

The appellate courts of Florida have finally addressed the issue of the meaning of "substantial assistance" and the rights of an accused thereunder. In *Campbell v. State*, 453 So.2d 525 (Fla. 5th DCA 1984), it was held that a plea bargain by which the State agreed to request the sentencing judge to grant leniency to the defendant in consideration of the defendant's substantial assistance in regard to crimes as yet undetected and unrelated to the defendant was without legal authority and was a nullity. Although the absence of a motion for leniency from the prosecutor prevents the trial judge from granting leniency to one convicted of trafficking in controlled substances (*State v. Taylor*, 411 So. 2d 933 (Fla. 4th DCA 1982)), a body of case law is developing that indicates that, in certain situations, the sentencing judge can overrule the failure to make such recommendation.

In *State v. Werner*, 402 So.2d 386 (Fla. 1981), our Supreme Court determined that the word "may" in F. S. 893.135(3) was not constitutionally invalid, and, in dicta, indicated that, while the concerns of the appellants therein that the prosecutor might unjustly refuse to move for deserved leniency in a particular case might be valid. ". . . (appellants) do not provide a constitutional basis to invalidate the enactment." (id. at page 387). The Supreme Court further stated:

> ". . . Absent a clear constitutional violation in a particular factual context, we refuse to intrude on the prosecutorial function by holding subsection (3) unconstitutional on its face." (id.)

The Second District Court of Appeal, in *State v. Bateman*, 423 So.2d 577 (Fla. 2d DCA 1982), agreed that there might eventually exist a factual scenario in which the failure of the prosecutor to recommend leniency might constitute overreaching and thereby amount to a constitutional infirmity. This same appellate court, in *State v. Johnson*, 10 FLW 2626 (Fla. 2d DCA 11/27/85), when confronted with an allegation that the Assistant State Attorney in a particular division of the circuit court of Hillsborough County had adopted a policy of never recommending leniency based upon substantial assistance, ruled that such a situation could amount to a denial of equal protection under the law of constitutional proportion.

From the foregoing discussion, it is apparent to this court that the present stage of the law is (1) the sentencing judge has the authority to inquire into the failure of a prosecutor to recommend leniency and, in

a proper circumstances, determine that such failure is a denial of constitutional protection to the aggrieved party, (2) the defendant who seeks the assistance of the trial judge in such a determination must be prepared to show on the record that the efforts made to render substantial assistance were genuine and worthy of a recommendation of leniency, and (3) a substantial assistance contract wherein the cooperating party is to render services in reference to crimes as yet undetected and unrelated to the cooperating defendant is without legal authority and is a nullity.

In the matter now before the court, the defendant asserts that she is entitled to a dismissal of the charges against her for reason that the confidential informant rendered services pursuant to a substantial assistance contract that is, in law, deemed to be a nullity. Assuming that, in fact, the substantial assistance agreement of the confidential informant herein was a nullity, such unenforceable contract does the defendant little good as is demonstrated by the discussion below.

The claim of defendant Pavon of a form of automatic standing to assert the right to suppression of evidence because the state entered into an unenforceable contract with Mrs. Dye is reminiscent of the assertions formerly made under *Jones v. United States*, 362 U.S. 257 (1960). Prior to the announcement of the opinions of the United States Supreme Court in *United States v. Salvucci*, 100 S. Ct. 2547 (1980) and *Rawlings v. Kentucky*, 100 S. Ct. 2556 (1980), any person against whom evidence was to be used in a criminal prosecution was recognized as having the legal right to suppression of such evidence if in the obtaining thereof the law enforcement officers violated the constitutional rights of another party. Since *Salvucci* and *Rawlings*, both *supra*, before one may be heard to assert a claim of illegality in the obtaining of evidence, one must demonstrate record evidence of the possession by the complaining party of a reasonable expectation of privacy in the area from which such evidence was obtained. Florida has aligned itself with the holdings in *Salvucci* and *Rawlings*, *supra*. *Inchaustegui v. State*, 392 So.2d 319 (Fla. 4th DCA 1980) cert. den. 402 So.2d 610 (Fla. 1981).

Analogizing the instant case to the theory of *Rawlings* and *Salvucci*, both *supra*, this court is of the opinion that Ms. Pavon had no reasonable expectation that a confidential informant would not enter into an illegal, unenforceable contract with law enforcement officers which would result in such confidential informant furnishing evidence that would be used by the state in a criminal prosecution of Ms. Pavon.

It is the ruling of this Court, in consideration of the foregoing

122

discussion, that Ms. Pavon is without standing, in law, to challenge the legality of the substantial assistance contract between Mrs. Dye and the State of Florida and, consequently, her Motion to Dismiss predicated thereon must be, and hereby is, DENIED.

## THE LOST TAPES

The most serious issue for the Court to resolve, and the most difficult, is whether the defendant has been so prejudiced by the failure of the Hollywood Police Department to safeguard the electronic recordings of the conversations between the accused and the confidential informant that the case should now be dismissed.

Ms. Pavon does not deny that she delivered to Mrs. Dye the package from which there was removed a quantity of controlled substance. The very foundation of her defense is (1) Ms. Pavon did not know the package contained cocaine and (2) she would not have picked up the package in the first place, much less have delivered it to the confidential informant, but for the statements made to Ms. Pavon by the confidential informant during the course of the telephone conversations, the recordings of which have been lost.

As is not unusual in narcotics cases of the type now before the court, the determination of guilt is frequently a question of credibility, i.e.: who will the fact finder believe, the state's witnesses or the witnesses called by the accused party? Where the critical conversations between parties vital to the case have been recorded, the fact finder is afforded the opportunity to personally hear that which was said and to make an interpretation which, to it, speaks the truth. Because of the inexcusable negligence of the Hollywood Police Department detectives involved in this case, the fact finder herein is denied the opportunity to draw its own conclusions as to the contents of the telephone conversations in issue.

The defendant herein relies heavily upon the somewhat similar case of *Farrell v. State*, 317 So.2d 142 (Fla. 1st DCA 1975) for support of her argument that dismissal of this case is the only proper remedy for the negligent loss or destruction of the tapes in issue. The State of Florida argues just as forcefully that dismissal is too drastic in a case where the missing tapes contained information that would be harmful, rather than helpful, to the case of the defendant.

In *Farrell, supra,* the accused asserted the defense of entrapment to charges of delivery of cocaine and possession of cocaine with the intent to sell. The meeting between the investigating officers and the accused was recorded on tape and, as the state admitted, contained information

123

that would have been helpful to the accused upon a defense of entrapment. The appellate court determined that the inadvertent/negligent loss of the subject tapes denied the defendant fundamental due process under both the state and federal constitutions and dismissal of the case was the proper remedy. In so doing, the *Farrell* court wrote, at page 144:

"Under the stipulated facts, defendants were denied due process. It is our opinion that our state and federal constitutions protect a person charged with a crime from acts which might be practiced in the name of justice by police and prosecuting officers to hinder an accused in the effective presentation of his defense. This abuse must not and will not be permitted."

Although it is necessary for an accused asking for the relief here sought to make a prima facie showing of prejudice by virtue of the inappropriate loss/destruction of important evidence (*State v. James*, 404 So.2d 1181 (Fla. 2d DCA 1981)), it is the responsibility of the state, and only the state, to demonstrate the lack of actual prejudice inuring to the defendant as a result of the conduct of state agents. *Wiese v. State*, 357 So.2d 755 (Fla. 4th DCA 1978) cited with approval in *State v. Sobel*, 363 So.2d 324 (Fla. 1978).

A careful reading of the cases cited by the State in the instant case in support of its opposition to the defendant's motion to dismiss for negligent loss of the tapes reveals that, without a doubt, if it can be shown that the accused merely *thinks* that the lost evidence would be helpful to the defense, such motion should be denied. The other side of the coin, however, is that if there appears in the record the probability of real prejudice to the accused in the preparation of a defense, and the *state* cannot dispel such appearance, then the court must enter into a balancing test to determine what, if any, sanction should be utilized against the state for such loss. *State v. Sobel, supra*. That the negligence of the law enforcement officers in reference to important evidence is sufficient to warrant a dismissal when such loss deprives the accused of an important right is not without precedent. *Colon v. State*, 453 So.2d 880 (Fla. 3d DCA 1984); *Stipp v. State*, 371 So.2d 712 (Fla. 4th DCA 1974) cert. den. 383 So.2d 1203 (Fla. 1980).

This Court held extensive hearings on the subject motion in order to determine whether there existed any real prejudice to Ms. Pavon in the preparation of her defense to the trafficking in cocaine charges now pending against her. After due reflection upon the content of the testimony offered, when viewed in light of the observations of this Court of the witnesses as they testified, it becomes even more apparent

124

that the missing tapes are important pieces of evidence. If the conversations between the confidential informant and the accused were of the nature claimed by the State, Ms. Pavon has very little defense to the criminal charges. If the same conversations were of the nature alleged by Ms. Pavon, who testified in her own behalf, then she may very well be entitled to a directed judgment of acquittal.

The body language of the witnesses as they testified before this Court was very informative. The court is of the opinion that the credibility of Mrs. Dye (the confidential informant) and Mr. Paul Miles is somewhat dubious (to be kind in one's evaluation thereof). Mr. Miles' fidgeting and squirming around in the witness seat, coupled with his "poor memory" and his general demeanor while testifying, generates very little confidence in the value and accuracy of his testimony. Mrs. Dye, as is revealed by her criminal history in Broward County as well as her obvious desire to avoid the filing of any criminal charges against her son (whose credibility is also suspect to this Court), and her general disregard for the impact of her actions upon the criminal exposure of others, clearly had something to gain by relating her version of the conversations in a manner designed to be of assistance to the successful prosecution of Ms. Pavon, the "friend" whom she delivered to the police in order to herself avoid the harsh penalties associated with trafficking in cocaine.

The law enforcement officers who testified were, in the opinion of this Court, trying very hard to be objective under the most difficult of circumstances. The Court does not feel that they were deliberately trying to mislead the Court as to the content of the missing tapes, but the human element cannot be ignored. Because they intended to rely upon the contents of the missing tapes in the prosecution of Ms. Pavon, it was not necessary for them to make verbatim notes of the subject conversations and, necessarily, they must now testify from memory in reference to an event that is embarrassing to them as professional law enforcement officers. The subconscious, intuitive self protection reaction endemic to human beings may have caused the detectives to remember critical elements of the subject conversations as they believe them to have been and not necessarily as they actually were.

Not to be overlooked when trying to determine the nature and extent of any prejudice that may have been visited upon Ms. Pavon as a result of the loss of the tapes is the reality that, no matter how hard one tries, it is virtually impossible to convey through description— whether in words, photographs or paintings—the nuances and subtleties of expression that occur during a conversation and which give bare

words their very life and meaning. If the Court had the missing tapes at its disposal, it could have, *for itself,* come to its own conclusions as to just what was meant by what was actually said by the parties to the conversations. Because of the negligence of the detectives involved in this case, no fact finder at any time nor at any place will have the opportunity to reach a conclusion unclouded with the interpretations thereof advanced by opposing parties.

For the reasons set forth above, it is the conclusion of the Court that the defendant's Motion to Dismiss Based Upon Negligent Loss/Destruction of the Electronic Recordings must be, and hereby is, GRANTED.