IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

LAWRENCE WILLIAM
PATTERSON,

Appellant,

v.

STATE OF FLORIDA,

Appellee.

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

CASE NO. 1D12-3982

_____/

Opinion filed November 20, 2014.

An appeal from the Circuit Court for Escambia County.
Linda L. Nobles, Judge.

Michael Ufferman of the Michael Ufferman Law Firm, Tallahassee, for Appellant.

Pamela Jo Bondi, Attorney General, and Wesley Paxson, III, Assistant Attorney General, Tallahassee, for Appellee.

MARSTILLER, J.

A jury convicted Lawrence William Patterson of two counts of first-degree arson (a dwelling); second-degree arson (a vehicle); arson resulting in bodily injury to a firefighter; two counts of insurance fraud; burning a dwelling with intent to

defraud; and burning a vehicle with intent to defraud. He seeks reversal of all convictions, arguing the trial court should have dismissed all the charges, or at least should have excluded the State's expert witnesses' testimony about the vehicle—a truck—allegedly used to start the fires, because the State allowed the truck to be destroyed before his expert could examine it. He also argues that several of the convictions and sentences violate double jeopardy principles.

On the latter argument, we find no double jeopardy violation, for the convictions are either based on separate, distinct criminal acts or, if not so based, authorized by clear legislative intent. *See* § 775.021(4), Fla. Stat. (2009); *Blockburger v. United States*, 284 U.S. 299 (1932); *Williams v. State*, 90 So. 3d 931, 933 (Fla. 1st DCA 2012). We affirm without further discussion.

As to the first argument, we also affirm, and discuss our reasoning because of the unusual evidentiary issue involved. The arsons for which Patterson was tried and convicted completely destroyed his house and truck (which was parked in the garage at the time). It was alleged that Patterson used the truck to start one of the two arson fires in the house. After State Fire Marshal and insurance company investigators completed their work, including inspecting the truck, and after the auto insurer paid Patterson the proceeds of his insurance policy, the insurer took custody of the truck and had it destroyed. This occurred five months before Patterson was arrested and charged. With the vehicle itself unavailable, Patterson's fire

2

investigation expert reviewed approximately 300 photographs of the burned truck and garage area. (He also personally inspected the dwelling.)

Before trial, Patterson moved the trial court to dismiss all the charges, or alternatively, to exclude any testimony from State expert witnesses opining, based on their physical examination of the truck, on whether the truck fire was intentionally started. He argued the State had intentionally destroyed the truck, making it unavailable to his expert and, as a consequence, violated his constitutional right to due process. The trial court denied the requested relief, allowing prosecution experts Stephen Callahan, Mike Miller and Bob Hallman to describe for the jury how they each examined the truck, and to give the jury their opinions on how the truck fire started.

Patterson argues on appeal the trial court should have dismissed the charges against him because the destroyed truck was of critical evidentiary value. He argues that because the State's theory of guilt hinged on whether he intentionally set the truck ablaze—a fire that, in turn, set his house on fire—the State was essentially duty-bound to preserve this key piece of evidence. Patterson cites *Farrell v. State*, 317 So. 2d 142 (Fla. 1st DCA 1975), in which this court found the State violated the defendants' right to due process when it unintentionally destroyed the recording of an undercover drug transaction from which the cocaine delivery and possession charges arose. We reversed the convictions and ordered the charges dismissed. 317

3

So. 2d 144. *Farrell* is inapposite, however, for the destruction of the recording occurred after the defendants timely demanded discovery. *Id*. at 143. Furthermore, the State had stipulated that the destroyed tape contained material evidence that would have been favorable to the defendants and could have been used to support their defense. Based on these undisputed facts, we concluded that the defendants were denied due process. *Id*.; *see Brady v. Maryland*, 373 U.S. 83, 83 (1963) ("[S]uppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith of bad faith of the prosecution.").

*Farrell* is a "*Brady* violation" case. Patterson's case is not. Not only was there no failure to disclose by the State, the exculpatory value of Patterson's destroyed truck is not apparent. Furthermore, Patterson has not shown—and the record does not reflect—that the pre-arrest destruction of the truck was so prejudicial as to demand dismissal of the charges against him. "The test for prejudice or materiality under *Brady* is whether, had the evidence been disclosed [or produced], there is a reasonable probability of a different result, expressed as a probability sufficient to undermine confidence in the outcome of the proceedings." *Guzman v. State*, 868 So. 2d 498, 508 (Fla. 2003) (citing *Cardona v. State*, 826 So. 2d 968, 973 (Fla. 2002)).

4

We consider *Arizona v. Youngblood*, 488 U.S. 51 (1988), the pertinent authoritative decision. There, the Supreme Court explained:

> The Due Process Clause of the Fourteenth Amendment, as interpreted in *Brady*, makes the good or bad faith of the State irrelevant when the State fails to disclose to the defendant material exculpatory evidence. *But we think the Due Process Clause requires a different result when we deal with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant. . . . [U]nless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law*.

488 U.S. at 57-8 (emphasis added). "Under *Youngblood*, bad faith exists only when police intentionally destroy evidence they believe would exonerate a defendant." *Guzman v. State*, 868 So. 2d 498, 509 (Fla. 2003).

There simply is no evidence in this record establishing that the State acted in bad faith. Rather, the evidence shows that, as a matter of standard procedure, the State Fire Marshal—the state actor here—does not involve itself in preserving physical evidence other than samples it collects from a fire scene and does not impound vehicles. It defers to law enforcement to take such actions. As it happened, in this case, the auto insurance company took possession of the ruined truck after paying out the policy proceeds and had it destroyed long before Patterson was arrested and charged. Moreover, the State Fire Marshal investigator took some 300 pictures of the truck and garage—all of which were made available to Patterson's

5

expert. In our view, this undermines any charge of intentional destruction of evidence. Absent a showing of bad faith by the State, the trial court did not err in refusing to dismiss the charges against Patterson.

Even if dismissal was not warranted, Patterson argues alternatively, the trial court should have excluded the testimony of the State's experts because the truck's unavailability rendered his trial fundamentally unfair. He relies on *Lancaster v. State*, 457 So. 2d 506 (Fla. 4th DCA 1984), which involves facts somewhat similar to, but decidedly not on all fours with, the instant case. *Lancaster* involved a truck fire, a defendant charged with arson, and the pre-arrest release of the damaged truck to be salvaged. And there, the similarity to Patterson's case ends.

In *Lancaster*, the Sheriff's Department took possession of the burned vehicle from the start and, doubting the defendant's explanation for how the fire began, ordered a physical examination of the vehicle by its own fire investigators. 457 So. 2d at 506. When the truck's owner (not the defendant) asked that it be returned to him, two officers—one of whom was the lead fire investigator—released the truck, thinking it was alright to do so because their investigation was complete and the truck no longer had evidentiary value to the State. *Id.* The day after returning the truck to its owner, a warrant was issued for the defendant's arrest. *Id.* By the time of trial, the truck owner had salvaged the truck, altering its condition. *Id.* Both officers acknowledged the truck could have been held until trial. *Id.*

6

Unlike the instant case, the state actor in *Lancaster* was not the Fire Marshal, but was the entity conducting the criminal investigation into the truck fire with an eye toward possible arrest, which arguably, though not necessarily, implied a responsibility to hold onto the evidence under the circumstances. The more important difference between Patterson's case and *Lancaster* is that the sheriff's fire investigators in *Lancaster* appear to have neither photographed the burned truck, nor preserved any samples taken from it. Consequently, the defendant had no basis on which to challenge their findings and conclusions. And, that is the circumstance that led the Fourth District to reverse the defendant's conviction, order a new trial, and direct the trial court on retrial to prohibit the investigators from testifying. *Id*. at 507. The appellate court reasoned that "'[i]t would be fundamentally unfair . . . to allow the state to negligently dispose of critical evidence and then offer an expert witness *whose testimony cannot be refuted by the Defendant*.'" *Id*. (quoting *State v. Ritter*, 448 So. 2d 512, 514 (Fla. 5th DCA 1984)) (emphasis added).

Here, Patterson's expert, Cam Cope, *was* able to use hundreds of photographs of the burned truck and surrounding garage area to formulate an opinion as to the cause of the fire, refuting the testimony of the two State experts—Callahan and Hallman—who physically inspected the truck and opined that the fire was intentionally set. In fact, much of the testimony from both sides' experts centered on their respective interpretations of observed burn patterns. Based on his study of

7

the photographs, Cope testified that the fire started in the engine area of the truck and traveled into the passenger compartment, contrary to Callahan's testimony. Cope said he saw no evidence in the pictures that any ignitable liquid was poured in the vehicle and set afire, and he explained how gasoline leaking from the truck's tank during the fire would account for its presence in the sample Callahan took from the truck. Although he could not specify the exact source of the fire because he was unable to physically examine the truck, Cope opined unequivocally: "It's [the fire] electrical in nature. All of the burn patterns would certainly tell me that it's electrical[.]" "I didn't see any evidence with regards to arson being a factor in this particular case."

Because the photographic depictions of the burned truck and garage area allowed Patterson to refute the testimony of the State's experts, we conclude the truck's physical unavailability did not render Patterson's trial fundamentally unfair. Accordingly, we affirm the convictions. *Cf. Lancaster*; *Stipp v. State*, 371 So. 2d 712 (Fla. 4th DCA 1979) (reversing defendant's conviction for cocaine possession where state lab unnecessarily destroyed entire drug sample during testing, and thus, presented irrefutable expert testimony against defendant). We note that the State did not argue to the jury that its experts' opinions were more credible than Cope's because they physically inspected the truck. Had the State done otherwise, we may have concluded differently.

AFFIRMED.

BENTON and WETHERELL, JJ., CONCUR.