# Supreme Court of Florida

_____

No. SC15-228
_____

**LAWRENCE WILLIAM PATTERSON**,
Petitioner,

vs.

**STATE OF FLORIDA**,
Respondent.

[August 25, 2016]

POLSTON, J.

In two vehicle arson cases, our First and Fourth District Courts of Appeal reached conflicting decisions regarding the due process implications of admitting the testimony of State experts who physically examined the vehicle prior to its destruction where the defendant's expert did not have that opportunity. Compare Patterson v. State, 153 So. 3d 307 (Fla. 1st DCA 2014) (finding no due process violation), with Lancaster v. State, 457 So. 2d 506 (Fla. 4th DCA 1984) (finding due process violation).[1] Applying the well-established rule from Arizona v.

_____

1. We have jurisdiction. See art. V, § 3(b)(3), Fla. Const.

<u>Youngblood</u>, 488 U.S. 51 (1988), that the State's loss or destruction of evidence potentially useful to the defense violates due process only when done in bad faith, we hold that no due process violation occurred in Patterson's case because there is no evidence of bad faith.  Accordingly, for the reasons explained below, we approve the result of the First District's decision in <u>Patterson</u> and disapprove the Fourth District's pre-<u>Youngblood</u> decision in <u>Lancaster</u>.

## BACKGROUND

Patterson's jury convicted him of multiple crimes stemming from the alleged arsons of his truck and residence.  As the First District explained,

> [t]he arsons for which Patterson was tried and convicted completely destroyed his house and truck (which was parked in the garage at the time).  It was alleged that Patterson used the truck to start one of the two arson fires in the house.  [Not long after firefighters extinguished this first fire that allegedly originated in the truck, they were called back to Patterson's residence in response to a second fire that allegedly originated in one of the bedrooms.]  After State Fire Marshal and insurance company investigators completed their work, including inspecting the truck, and after the auto insurer paid Patterson the proceeds of his insurance policy, the insurer took custody of the truck and had it destroyed.  This occurred five months before Patterson was arrested and charged.  With the vehicle itself unavailable, Patterson's fire investigation expert reviewed approximately 300 photographs of the burned truck and garage area.  (He also personally inspected the dwelling.)
> Before trial, Patterson moved the trial court to dismiss all the charges, or alternatively, to exclude any testimony from State expert witnesses opining, based on their physical examination of the truck, on whether the truck fire was intentionally started.  He argued the State had intentionally destroyed the truck, making it unavailable to his expert and, as a consequence, violated his constitutional right to due process.  The trial court denied the requested relief, allowing

> prosecution experts Stephen Callahan, Mike Miller and Bob Hallman to describe for the jury how they each examined the truck, and to give the jury their opinions on how the truck fire started. [In addition to these experts, the State presented expert testimony from David Cheers, an investigator retained by Patterson's homeowner's insurance company who also physically examined the truck.]

Patterson, 153 So. 3d at 309.

At trial, the experts' testimony conflicted as to the origin of the fire, with the State's experts testifying that the fire was not accidental and Patterson's expert testifying that it was. Though the State's experts had physically examined the truck before it was destroyed, whereas Patterson's expert did not have that opportunity, the experts relied heavily on extensive photographs of the truck and garage to support their testimony.

For example, the State's experts relied on the following in support of their conclusion that the fire was not accidental: (i) burn patterns in the truck indicating that the fire primarily came from the passenger compartment, rather than from electrical components in the engine compartment; (ii) burn patterns on the inside wall of the garage on the passenger side of the truck indicating that the truck's passenger door was open during the fire; (iii) a sample taken from the passenger compartment that tested positive for gasoline, indicating that accelerant had been poured inside the truck and ignited by an open heat source; (iv) the presence of combustible material remaining in the engine compartment that would not be expected to withstand a fire that began in the engine, including plastic on the

battery and aluminum, which has a low melting point, on the radiator; and (v) wiring in the engine compartment, passenger compartment, and under the dashboard that showed no signs of arcing as would be expected if the fire's origin was electrical.

In contrast, Patterson's expert, Cam Cope, testified that from his examination of the photographs, "all of the burn patterns would certainly tell me that [the fire was] electrical," and that there was no evidence in the photographs that someone ignited gas in the seat, which Cope testified would be extremely difficult to do without suffering serious injuries that Patterson lacked. Cope further explained that it was not surprising that a sample taken from the passenger compartment tested positive for gasoline because during the fire the gas tank burned and leaked (which he said caused the burn pattern on the wall beside the truck), and the fire department then sprayed the area where gasoline had leaked on the ground with high pressure hoses back toward the truck. In addition, Cope noted that the lack of burning of combustible material in the passenger compartment, including the center console, further informed his opinion that the fire began in the engine, likely in the powertrain control module, which was not photographed.

Cope also testified to his perceived shortcomings of the State's experts' opinions and investigation. Specifically, Cope testified that he did not agree with

the testimony regarding the absence of arcing because some circuits in a vehicle are energized 100% of the time, and as long as a battery is in a vehicle there will be cross arcing. Cope also identified several electrical components that should have been further examined, such as the powertrain control module, electronic seats, seat heaters, headlights, and aftermarket components that had been added to the truck, and he testified that x-rays would have been required to properly examine some of those components. In addition to noting that those components were impossible to examine since the truck had been destroyed, Cope testified that the State's experts did not address them in their reports and that they cannot be eliminated as the cause of the accidental fire.

After Patterson's jury found him guilty on all counts, he appealed to the First District, arguing that "the trial court should have dismissed the charges against him because the destroyed truck was of critical evidentiary value," or, alternatively, that under the Fourth District's decision in Lancaster, "the trial court should have excluded the testimony of the State's experts because the truck's unavailability rendered his trial fundamentally unfair." Patterson, 153 So. 3d at 309, 310. The First District rejected both arguments and affirmed. In so holding, the First District relied on Youngblood to reject Patterson's argument that due process required dismissal of the charges against him because the record was devoid of any evidence that the truck was destroyed in bad faith. Id. at 310. In rejecting

- 5 -

Patterson's alternate argument that due process required exclusion of the State's experts' testimony, the First District factually distinguished Lancaster, emphasizing that in Lancaster's case, the State "neither photographed the burned truck, nor preserved any samples taken from it," leaving Lancaster (unlike Patterson) with "no basis on which to challenge [the State's experts'] findings and conclusions." Id. at 311.

## ANALYSIS

Relying on the Fourth District's decision in Lancaster, Patterson argues that the trial court's failure to preclude the testimony of the State's experts who physically examined his truck violates his due process right to a fair trial.[2] We disagree.

As this Court has explained, the standard for analyzing an alleged due process violation in cases involving the defendant's constitutional right to access evidence "depends on the type of error asserted and whether the evidence is exculpatory, impeaching, or merely potentially useful." Beasley v. State, 18 So. 3d 473, 487 (Fla. 2009).

Claims involving the State's suppression of favorable evidence are analyzed under Brady v. Maryland, 373 U.S. 83 (1963), recognizing a due process violation

---

2. We review this legal question de novo. See Delgado v. State, 162 So. 3d 971, 981 (Fla. 2015).

- 6 -

where the defendant shows "(1) that favorable evidence—either exculpatory or impeaching, (2) was willfully or inadvertently suppressed by the State, and (3) that because the evidence was material, the defendant was prejudiced." Beasley, 18 So. 3d at 487.

In contrast, claims involving the State's destruction of evidence "potentially useful to the defense" are analyzed under Youngblood, recognizing a due process violation "only if the defendant can show bad faith on the part of the [State]." Guzman v. State, 868 So. 2d 498, 509 (Fla. 2003); see also King v. State, 808 So. 2d 1237, 1242 (Fla. 2002) ("The landmark case of . . . Youngblood[], and all cases since, requires a defendant to show bad faith on the part of the person destroying evidence before any relief can be afforded."); see also 1 Charles W. Ehrhardt, Florida Evidence § 401.1, at 164-65 (2015 ed.) ("In a criminal case, due process apparently is not violated by the state introducing circumstantial evidence or testimony which the state has lost or destroyed unless it is shown that the destruction was in bad faith and there is actual prejudice to the accused.").

Thus, Brady and Youngblood "involve two different tests regarding evidence possessed by the State," with a defendant's ability to prove the State's bad faith is not relevant to securing relief on a Brady claim, but critical to securing relief on a Youngblood claim. Beasley, 18 So. 3d at 500 (Pariente, J., concurring); see also Youngblood, 488 U.S. at 57 ("The Due Process Clause of the Fourteenth

- 7 -

Amendment, as interpreted in Brady, makes the good or bad faith of the State irrelevant when the State fails to disclose to the defendant material exculpatory evidence. But we think the Due Process Clause requires a different result when we deal with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant.").

The Supreme Court explained the reason for requiring the defendant to show bad faith where the lost or destroyed evidence is only "potentially useful" evidence (as opposed to material exculpatory evidence under Brady) as follows:

> Part of the reason for the difference in treatment is found in the observation made by the Court in [California v. ]Trombetta[, 467 U.S. 479, 486 (1984)], that "[w]henever potentially exculpatory evidence is permanently lost, courts face the treacherous task of divining the import of materials whose contents are unknown and, very often, disputed." Part of it stems from our unwillingness to read the "fundamental fairness" requirement of the Due Process Clause . . . as imposing on the police an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution. We think that requiring a defendant to show bad faith on the part of the police both limits the extent of the police's obligation to preserve evidence to reasonable bounds and confines it to that class of cases where the interests of justice most clearly require it, i.e., those cases in which the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant.

Youngblood, 488 U.S. at 57-58.

Patterson does not quarrel with the well-established standards of Brady and Youngblood. Nor does Patterson attempt to escape the obligation to prove bad

- 8 -

faith by arguing that the destroyed truck is material exculpatory evidence rather than potentially useful evidence. It clearly is not material exculpatory evidence. The most that could be said is that, if the components that Patterson's expert identified as potential causes of the fire had been subjected to additional examination and testing, they might have supplied evidence to further support Patterson's theory that the fire was electrical and therefore accidental. Instead, rather than seek relief under either of the two possible standards, Patterson urges this Court to apply a different standard—i.e., Lancaster's—because "he is not seeking a blanket exclusion of evidence [but] merely seeking that the experts from both parties be placed on a level playing field" in a new trial at which only experts who have not physically examined the truck may testify.

In Lancaster, four years before the United States Supreme Court's decision in Youngblood, the Fourth District held that Lancaster's due process rights were violated by allowing the State to present testimony from an expert who had examined the truck that Lancaster was accused of intentionally burning. Lancaster, 457 So. 2d at 507. The Fourth District emphasized that Lancaster could not refute the testimony of the State's expert because his own expert did not have the opportunity to examine the vehicle. Id. As a remedy for the violation, the Fourth District reversed for a retrial in which "the state will be precluded from calling as witnesses the experts who physically examined the truck." Id.

In so holding, the Fourth District rejected the State's argument that "the 'mere possibility' that examination of the truck would have assisted [Lancaster] should not result in reversal." Id. Instead, the Fourth District relied on its prior decision in Stipp v. State, 371 So. 2d 712 (Fla. 4th DCA 1979), for the proposition that "a due process violation exists when the state unnecessarily destroys the most critical inculpatory evidence and then is allowed to introduce essentially irrefutable testimony of the most damaging nature." Lancaster, 457 So. 2d at 507 (citing State v. Counce, 392 So. 2d 1029 (Fla. 4th DCA 1981); Johnson v. State, 249 So. 2d 470 (Fla. 3d DCA 1971)); see also Lancaster, 457 So. 2d at 507 ("It would be fundamentally unfair, as well as a violation of rule 3.220, to allow the state to negligently dispose of critical evidence and then offer an expert witness whose testimony cannot be refuted by the Defendant.") (quoting State v. Ritter, 448 So. 2d 512, 514 (Fla. 5th DCA 1984)).

However, the law has changed since the Fourth District decided Lancaster. As the First District explained below, Youngblood is now "the pertinent authoritative decision" for analyzing whether the State's destruction of evidence "potentially useful" to the defendant violates due process. Patterson, 153 So. 3d at 310 (quoting Youngblood, 488 U.S. at 58). The remedy the defendant seeks for the alleged due process violation does not change the standard applicable to determining whether a due process violation occurred. In other words,

Youngblood is the proper standard for judging whether due process has been violated whenever the State's loss or destruction of potentially useful evidence is at issue, even where—as here—the remedy sought for the alleged violation is the exclusion of evidence as opposed to the complete dismissal of the charges. See State v. Coleman, 911 So. 2d 259, 261 (Fla. 5th DCA 2005) (reversing trial court's decision to exclude evidence (rather than dismiss the case) because "to sanction the State on due process grounds, based upon the loss or destruction of potentially exculpatory, documentary evidence, there must be a showing of bad faith" (emphasis added) (citing Youngblood, 488 U.S. at 58)).

Applying Youngblood's standard to the facts of Patterson's case, no due process violation occurred. "There simply is no evidence in this record establishing that the State acted in bad faith," as everyone who physically examined the truck determined the fire was not accidental, and Patterson's own insurance company had the truck destroyed after the State released it. Patterson, 153 So. 3d at 310; see also Armstrong v. State, 73 So. 3d 155, 172 (Fla. 2011) ("Youngblood explained that the 'presence or absence of bad faith for purposes of the Due Process Clause must necessarily turn on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed.' ") (quoting Youngblood, 488 U.S. at 56 n.*)).

Furthermore, as the First District held below, a key factual difference between Lancaster and this case illustrates why Patterson's argument that fundamental fairness requires a new trial (which if we accepted would effectively require us to circumvent Youngblood by way of Lancaster) is misplaced:

> [An] important difference between Patterson's case and Lancaster is that the sheriff's fire investigators in Lancaster appear to have neither photographed the burned truck, nor preserved any samples taken from it. Consequently, the defendant had no basis on which to challenge their findings and conclusions. And, that is the circumstance that led the Fourth District to reverse the defendant's conviction, order a new trial, and direct the trial court on retrial to prohibit the [State's] investigators from testifying.

Patterson, 153 So. 3d at 311.

In contrast to the truck in Lancaster, Patterson's truck was extensively photographed prior to its destruction. Relying on these photographs, Patterson's expert presented detailed testimony as to why, in his opinion, the truck fire's origin was electrical and therefore accidental in nature. Similarly, the State's experts made extensive use of the photographs to support their contrary opinions that the fire's origin was not accidental. See Patterson, 153 So. 3d at 311 ("[M]uch of the testimony from both sides' experts centered on their respective interpretations of observed burn patterns."). Patterson also used his expert to undermine the thoroughness of the examinations performed by the State's experts, including through his expert's testimony identifying components that the electrical engineer did not address in his report and components that should have been removed and

- 12 -

examined (including x-rayed) but were not. Therefore, even though Patterson's expert did not have the same opportunity to physically examine the truck as the State's experts, because the State preserved extensive photographs of the truck, Patterson, unlike Lancaster, was able to defend against the State's charges.

Accordingly, there is no basis to depart from <u>Youngblood</u> as the proper standard for analyzing Patterson's due process argument. And, as explained above, there is no due process violation under <u>Youngblood</u> because there is no evidence that Patterson's truck was destroyed in bad faith.[3]

**CONCLUSION**

Finding no due process violation under <u>Youngblood</u>, we approve the result of the First District's decision in <u>Patterson</u> and disapprove the Fourth District's decision in <u>Lancaster</u>.

It is so ordered.

LABARGA, C.J., and PARIENTE, LEWIS, QUINCE, CANADY, and PERRY, JJ., concur.

---

3. Patterson also takes issue with the State's request during closing argument for the jury to consider "how thorough" its experts' investigations were, arguing that this statement improperly suggested that the jury should find the State's experts more credible than his because they physically examined the truck. However, Patterson's trial counsel did not object to or request any relief as a result of this statement (perhaps for good reason because, in the context of the entire record, this statement appears to have been a fair response to Patterson's expert's testimony faulting the quality of the State's experts' investigation). In any event, Patterson has not argued in this Court that his trial counsel's failure to object was fundamental error, nor is it. <u>See</u> <u>Evans v. State</u>, 177 So. 3d 1219, 1234 (Fla. 2015).

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

Application for Review of the Decision of the District Court of Appeal - Direct Conflict of Decisions

First District - Case No. 1D12-3982

(Escambia County)

Michael Robert Ufferman of Michael Ufferman Law Firm, P.A., Tallahassee, Florida,

for Petitioner

Pamela Jo Bondi, Attorney General, Trisha Meggs Pate, Bureau Chief, and Kathryn Lane, Assistant Attorney General, Tallahassee, Florida,

for Respondent