DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**WALTER RICARDO LOPEZ BARRIOS,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D19-2569

[April 7, 2021]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Rosemarie Scher, Judge; L.T. Case No. 50-2016-CF-008349-AXXX-MB.

Carey Haughwout, Public Defender, and Virginia Murphy, Assistant Public Defender, West Palm Beach, for appellant.

Ashley Moody, Attorney General, Tallahassee, and Jessenia J. Concepcion, Assistant Attorney General, West Palm Beach, for appellee.

**ON APPELLANT'S MOTIONS FOR REHEARING AND CLARIFICATION**

FORST, J.

We grant Appellant's motion for rehearing to correct a factual error but otherwise deny the motion. We also grant Appellant's motion for clarification and remove a sentence from the original opinion. Thus, we withdraw the December 16, 2020 opinion and substitute this opinion in its place.

Appellant Walter Lopez Barrios appeals from his convictions and sentences for first-degree murder with a deadly weapon and aggravated assault with a deadly weapon. We find no error with respect to either of the issues raised on appeal and affirm in all respects. We write only to address Appellant's argument that the trial court erred in failing to properly address the alleged spoliation of evidence that impacted Appellant's argument of self-defense.

**Background**

On the morning of the incident, Appellant and his wife ("the victim") got into an argument because the victim's daughters reported to the victim that, for some time, Appellant had been going into the oldest daughter's room each night and inappropriately touching her. After hearing this, the victim called Appellant and warned him that if he ever touched her daughter again, she would kill him. She also told him that he was never to return to their home where, until this point, they had lived together with the victim's two minor daughters.

After work that evening, Appellant purchased a handgun and returned to the marital home. He testified that his decision to purchase the firearm was unrelated to his heated argument with the victim that morning.

The defense's trial narrative was that, after arriving home, Appellant went into the victim's bedroom to talk about the accusations of sexual assault, which he asserted were false. Appellant testified that he placed the firearm on the bed, but that during the argument, the victim grabbed the gun and pointed it at him. In response, Appellant knocked the victim's hand away, causing an accidental discharge of the firearm. When the shot missed, he and the victim began struggling over the gun, but he was eventually able to wrestle the firearm away from her. Seeing that the gun had misfired, and that two bullets were jammed in the slide opening, Appellant assumed the gun was inoperable and tossed it back onto the bed.

Appellant testified that he then went to leave the room, but the victim attacked him with a kitchen knife. He testified that he wrestled the knife away from her and, once he gained control of it, he stabbed her multiple times, but that none of these stabs were fatal. However, he claimed that once he stopped stabbing the victim, she again came at him. This time, Appellant grabbed a sledgehammer out of his toolbox and struck the victim multiple times, ultimately killing her. After an encounter with one of the daughters, Appellant fled the home, and was subsequently arrested and charged with first-degree murder with a deadly weapon and, with respect to the altercation with one of the victim's daughters, aggravated assault with a deadly weapon.

As part of the State's investigation into the victim's violent death, crime scene investigators collected evidence from various items to process for DNA. The firearm Appellant had purchased was among the items examined.

At trial, the State presented testimony and evidence that when

investigators examined the gun at the scene, they discovered that a misfired bullet was stuck in the gun and that the weapon appeared to be jammed. Thus, pursuant to protocol, a detective cleared the gun to make it safe. In doing so, while wearing gloves, he picked up the gun, released the magazine and pulled back the slide until the malfunction cleared. After rendering the gun safe, the detective packaged and secured the firearm, magazine and live rounds. The gun was covered in blood and, at that time, crime scene investigators swabbed various parts of the gun for forensic analysis, including its hammer, slide and frame, muzzle, grips and butt, magazine and the bullet found within the gun.

At trial, a forensic scientist testified that the swab results found both Appellant's and the victim's DNA and fingerprints on various parts of the gun. However, on the magazine and the bullet found within the gun, 99% of the DNA recovered was determined to be the victim's, and the remaining 1% was inconclusive. Appellant contended that this evidence confirmed the defense theory that the victim had loaded the gun herself or, at the very least, had opened the magazine to determine whether the firearm was loaded because she had intended to kill him.

The State sought to present rebuttal testimony as to the detective's handling of the gun to explain that the detective wore the same pair of gloves while handling the gun, including the extraction of the magazine and bullet. In response, Appellant filed a motion alleging spoliation of the firearm based on the detective's handling of the firearm. Based on the alleged spoliation, Appellant requested that the murder charge be stricken or, alternatively, either the detective be barred from testifying in rebuttal or the jury receive a special instruction that it could infer the evidence would have been favorable to Appellant. The trial court denied the motion in its entirety, stating that no contamination had been established.

## Analysis

On appeal, Appellant maintains that the trial court erred in failing to provide him with any of his proposed "solutions" to the alleged spoliation of evidence. He maintains that the detective mishandled the gun by using the same pair of gloves to handle both the exterior of the gun and the magazine and bullets. He argues that, in doing so, the State could claim that this transferred the victim's DNA from the outside of the gun to the inside, providing an explanation for the presence of the victim's DNA on the magazine and bullet within the gun. Per this argument, the detective's rebuttal testimony undermined the relevance of the victim's DNA being found on the magazine and bullet within the gun, which would have been exculpatory as giving credibility to Appellant's narrative of events.

3

"Whether a defendant's due process rights have been violated by the State's destruction of or failure to preserve evidence is a legal question and is therefore reviewed de novo." *Goodman v. State*, 229 So. 3d 366, 373 (Fla. 4th DCA 2017) (citing *Patterson v. State*, 199 So. 3d 253, 256 n.2 (Fla. 2016)).

"Where *lost or unpreserved evidence* is 'material exculpatory evidence,' the loss of such evidence is a violation of the defendant's due process rights and the good or bad faith of the State is irrelevant." *State v. Davis*, 14 So. 3d 1130, 1132 (Fla. 4th DCA 2009) (emphasis added) (quoting *State v. Muro*, 909 So. 2d 448, 452 (Fla. 4th DCA 2005)); *see also Kelley v. State*, 486 So. 2d 578, 581 (Fla. 1986) (noting that *Brady v. Maryland*, 373 U.S. 83, 87 (1963) "laid down the proposition that '[t]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution'"). In those cases where evidence has been lost or destroyed, either intentionally or inadvertently, sanctions for discovery violations may be appropriate, pursuant to Florida Rule of Criminal Procedure 3.220(n). Thus, a prerequisite for sanctions based on spoliation, is that material evidence be "lost or destroyed."

Here, there could be no finding that any evidence was destroyed because there was no evidence to support's Appellant's contention that the firearm had been contaminated. The detective who handled the firearm testified that he followed protocol in clearing the gun before removal, and that he used a clean set of gloves to disassemble the gun to make it safe for transport. In addition, the crime scene investigator who initially processed the firearm at the scene similarly testified that, after photographing the firearm, she put on a clean pair of gloves, and attempted to clear and remove the magazine before asking the detective to clear the firearm for her using a clean set of gloves. Both testified that this was the routine process to clear a gun before removing it from a scene.

As to whether the evidence (here, the victim's DNA found on the magazine and ammo) is "material either to guilt or punishment," the State did not challenge Appellant's contention that both the victim and Appellant touched the firearm. *See Brady*, 373 U.S. at 87. In fact, the State argued that the victim's blood and DNA were all over the exterior *and* interior of the gun, because of the struggle. It was left to the jury to sort out whether the victim was the aggressor in this struggle. As the trial court cogently noted, "[e]verybody's testified -- I mean, they're not objecting or saying in any way [the victim] did not touch the gun. But I think reasonable

4

inferences can be made in argument from the evidence."

There is a lack of evidence supporting Appellant's contention that the firearm was contaminated or that evidence was "lost or destroyed." Thus, either a finding of spoliation and/or sanctions on the State would be improper.

## Conclusion

We find no error in the trial court's denial of spoliation remedies to Appellant because there was no indication of "lost or destroyed" exculpatory evidence based on the State's handling of the firearm. Moreover, any diminution in the persuasiveness of Appellant's argument regarding the discovery of the victim's DNA on the inside of the gun was immaterial—the State never argued that the victim did not struggle for control of the firearm, and Appellant testified that the gun had jammed and was not a factor in the stabbing and hammer blows that killed the victim. Accordingly, we find no error in the trial court's judgment and affirm Appellant's convictions and sentences.

*Affirmed.*

MAY and KUNTZ, JJ., concur.

\*　　　\*　　　\*

***Not final until disposition of timely filed motion for rehearing.***